COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

PATRICIA WELCHMAN,                                   )

                                                                              )               No.  08-02-00193-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
168th District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of El Paso County, Texas

Appellee.                           )

                                                                              )              
 (TC# 20010D01462)

                                                                              )

 

 

O P I N I O N

 

Appellant Patricia
Welchman appeals her conviction for the offense of
possession of a controlled substance, to-wit: 
cocaine, having an aggregate weight, including adulterants or dilutants, of less than one gram.  See Tex.Health & Safety Code Ann.' 481.115(a) and (b) (Vernon 2003).  After the jury found Appellant guilty, the
trial court sentenced Appellant to 2 years=
state jail, probated to 5 years=
community supervision, and fined her $500. 
On appeal, Appellant raises three issues, in which she challenges the
legal and factual sufficiency of the evidence to sustain the conviction and
argues the trial court erred in submitting a charge that included a law of parties instruction because there was no evidence to support
its submission.   We affirm.








SUMMARY
OF THE EVIDENCE

On the morning of
March 10, 2001, Appellant left her home at 12021 Parchment El Paso, Texas,
walked over to the home of her neighbor Luis Caldera, and asked Mr. Caldera for
help.  To Mr. Caldera, Appellant looked
scared and very nervous and he had difficulty making sense of what she was
saying.  Appellant told Mr. Caldera her
husband was trying to frame her.  She
also told Mr. Caldera that her husband had pawned her gun, but that she was
able to Akeep this
one,@ pointing
to her purse.  In reply to Mr. Caldera=s questions, Appellant told him that
her husband was in their house and had a gun. 
Mr. Caldera told Appellant she could use his phone to call the
police.  Mr. Caldera led Appellant into
the kitchen of his house.  Appellant
placed her purse on the kitchen table. 
Mr. Caldera picked up the phone and dialed 911 for Appellant, who spoke
with the operator, and then the police. 
After speaking with police, Appellant handed the phone to Mr. Caldera
who told the officer the address and where the gun was located.








El Paso Police
Officer Ricardo Herrada was the first officer to
arrive at Mr. Caldera=s
home.  Dispatch information indicated
that the female of the family disturbance was at the neighbor=s address.  When Officer Herrada
arrived at Mr. Caldera=s
home, Mr. Caldera informed him that his neighbor had come to his house because
she was having problems with her husband and alerted Officer Herrada that she had a gun in her purse.  Officer Herrada
entered the home and saw Appellant on the phone.  Appellant seemed upset and was yelling in a
loud voice at the person to whom she was speaking.  Officer Herrada
went to the kitchen, opened Appellant=s
purse, removed the gun, unloaded it, and put it in his back pocket.  When Appellant got off the phone, Officer Herrada asked her what had happened.  Appellant explained that she and her husband
and some people at their house had been partying all night and that her husband
was threatening to frame her for having drugs in the house.  When Officer Herrada
asked if there were drugs in the house, Appellant answered yes.

In response to the
dispatch to investigate a domestic violence call, El Paso Police Officers Guilibaldo Muniz and Raymundo
Chavez drove by the neighbor=s
house, radioed Officer Herrada, and then proceeded to
Appellant=s
home.  The officers spoke with Mr. Welchman on the front porch and he told them there had been
an argument and Appellant had left. 
Officer Chavez stayed with Mr. Welchman in the
front yard, while Officer Muniz walked over to the neighbor=s home where Appellant was standing
with Officer Herrada in the driveway.  Officer Muniz began questioning Appellant
regarding the possibility of a domestic violence incident, but Appellant
responded that she had not been assaulted or threatened with violence.  As he was asking questions, Appellant brought
up the fact that there were drugs throughout the house.  Officer Muniz asked her why she was bringing
this up.  Appellant paused, did not
answer, and just looked at him.  Officer
Muniz then asked her if she wanted him to go into the home and confiscate the
drugs.  Appellant paused, and then said AYes, sir, I believe I want you to do
that.@  Officer Muniz recalled Appellant telling him
that she, Mr. Welchman, and another couple in the
home had been up partying all night and that morning there was an argument
which stemmed from her husband and the other couple trying to frame her with
possession of the drugs.  Officers Muniz
and Herrada obtained Appellant=s
written consent to search the home and vehicles.  Officer Muniz then called for assistance
units to search the home.  Office Muniz
could see the other couple, later identified as Theryl
Monique Bonner and Albert Isassi, that Appellant had referred to were now standing with
Officer Chavez and Mr. Welchman in the front yard.








Officers Muniz and
Herrada walked back to the home while Appellant drove
to the home.  As the officers approached
the house, Mr. Welchman denied them entry, but the
officers told him that his spouse had given a consent
to search.  Appellant led the officers
through the formal living room at the front entry to the family room in the
back and pointed out some contraband in the family room area.  Officer Muniz asked Appellant where they had
been partying and she told him in the upstairs loft area.  Appellant remained seated in the family room
while the officers searched the home.

The State
introduced into evidence numerous items of drug paraphernalia, some containing
cocaine residue, which were found in various locations throughout Appellant=s house, specifically in the upstairs
loft, a southwest master bedroom, an adjoining bathroom and closet, the
kitchen, the living room, a second living room or den, and inside the trunk of
a car in the garage.  In the upstairs
loft, police officers found a lighter, a handmade smoking pipe made from the
cardboard of a toilet paper roll wrapped in aluminum foil, a metal smoking pipe
with a burnt filter inside, a plate, a spoon, plastic baggies, and an empty
jar.  Officer Muniz indicated that the
items would have been used for smoking and holding the substance.  In the loft, officers found cocaine residue
on a mirror laying on the carpet floor, on a counter
top, and on a makeup kit.








In the southwest
master bedroom , officers found silver spoons with
what appeared to be cocaine residue, a brass-colored screen filter, a penny
with cocaine residue, a plastic component with cocaine residue, a paper diamondfold filled with cocaine, and tobacco rolling
paper.  Officer Muniz testified that the
screen or scouring pad is used in conjunction with smoking and ingesting
illicit drugs and the spoons are used to mix the items or substance to be
ingested.  In the adjoining bathroom,
officers found two spoons, which field tested positive for cocaine residue, two
burnt filters, and a metal dental instrument with cocaine residue.  In the closet next to the bathroom, officers
found two spoons, which field tested positive for cocaine residue.  One of the spoons was found inside a woman=s size shoe.

In the kitchen,
officers recovered a pipe used for narcotics, a measuring spoon, containing diamondfolds that are used to transport/hold narcotics, and
a measuring cup with diamondfolds in it.  Officer Chavez testified that paper diamondfolds are used to transport and hold narcotics.  Officers found a discarded burnt glass
smoking pipe in the trash can, two glass pipes in a cupboard, and a glass
baking pan containing several strands or strips of filter, unused filter, a
smoking pipe, and a spoon with residue which field tested positive for cocaine
residue.  On top of the refrigerator,
officers found a wooden box containing empty diamondfolds,
a black box containing five burnt filters, a bottle of a vitamin-complex which
may be used to cut cocaine, and a plastic bindle which Officer Alvarez
testified is a part of a plastic baggie used to package narcotics.  On the kitchen counter, officers found
plastic bindles, a pipe, used and unused filters, and a plate containing a
white powdery substance that was later identified as .10 grams of cocaine.  The plate also contained a business card or
federal membership card, which had Albert Welchman=s name on it.  Officers also recovered .02 grams of cocaine
located in the kitchen area on top of a coaster.  A male=s
jacket belonging to Mr. Isassi was also found in the
kitchen area, which contained an electric gram scale and several bindles of
cocaine.[1]  There was a lady=s
purse hanging on top of the jacket.








In the living
room, officers found the following items: a clear plastic baggie located under
the couch foam cushion that contained a white powdery substance later
identified as .40 grams of cocaine.  In a
drawer, officers found a burnt screen filter. 
In the den or second living room, officers found several used burnt
smoking pipes and a makeup kit with mirror which field tested positive for
cocaine residue.  On the coffee table,
officers found a spoon with cocaine residue, a burnt glass smoking pipe, and a
lighter.  From their search of the garage
area, officers found a spoon, a plastic item modified to use as a pipe, and a
lighter--all in the trunk of a vehicle believed to be owned by Appellant and
inside a trash can officers also found a glass pipe and some plastic with
cocaine residue.

According to
Officer Barry Alvarez with the narcotics division of the El Paso Police
Department, all of what was found in the house could not have been done in the
course of twenty-four hours.  Based on
his knowledge and experience, he also thought it unlikely that all the drug
paraphernalia strewn about the house was from one night of partying.  Officer Alvarez testified that officers
recovered two pieces of mail addressed to Appellant in the house, one from the
Socorro Independent School District and another from the El Paso Employees
Credit Union.  Officers also determined
that Appellant and Albert Welchman were the
homeowners and that Mr. Isassi and Ms. Bonner did not
live at the residence.  Ann Marie Falknor, a criminalist with the
Texas Department of Public Safety, criminalist,
testified that in the aggregate, officers recovered .52 grams of cocaine in
this case.

DISCUSSION

Sufficiency
of the Evidence

In Issues One and
Two, Appellant challenges the legal and factual sufficiency to sustain her
conviction for possession of cocaine because the State failed to show she
maintained care, custody, management, and control over the cocaine admitted
into evidence.

 








Standards
of Review

In reviewing the
legal sufficiency of the evidence, we must view the evidence in the light most
favorable to the verdict to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2788-89, 61 L.Ed.2d 560, 573 (1979). 
The standard is the same for both direct and circumstantial evidence
cases.  King v.
State, 895 S.W.2d 701, 703 (Tex.Crim.App. 1995).  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact.  See Adelman
v. State, 828 S.W.2d 418, 421 (Tex.Crim.App.
1992); Lucero v. State, 915 S.W.2d 612, 614 (Tex.App.--El
Paso 1996, pet. ref=d).  Rather, our duty is to determine whether both
the explicit and implicit findings of the trier of
fact are rational by viewing all the evidence admitted at trial in the light
most favorable to the verdict.  See Adelman, 828 S.W.2d at 421-22.  In so doing, any inconsistencies in the
evidence are resolved in favor of the verdict. 
Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).








In reviewing a
factual sufficiency challenge, we view all of the evidence in a neutral light,
both for and against the verdict, to determine whether it demonstrates that the
proof of guilt is so obviously weak as to undermine our confidence in the jury=s determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof.  Johnson v. State, 23
S.W.3d 1, 11 (Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 134 (Tex.Crim.App. 1996). 
We review the evidence supporting a disputed fact and compare it to
evidence tending to disprove that fact.  Johnson,
23 S.W.3d at 6-7; Jones v. State, 944 S.W.2d 642, 647 (Tex.Crim.App. 1996), cert. denied, 522 U.S. 832, 118
S.Ct. 100, 139 L.Ed.2d 54 (1997).  While we are authorized to disagree with the
jury=s
determination, we must give due deference to the jury=s
assessment of the weight and credibility of the evidence to avoid substituting
our judgment for that of the fact finder. 
Johnson, 23 S.W.3d at 8-9; Jones,
944 S.W.2d at 648.  We will set aside a
verdict only where the evidence supporting guilt is so obviously weak or the
contrary evidence so overwhelmingly outweighs the supporting evidence as to
render the conviction clearly wrong and manifestly unjust.  Ortiz v. State, 93 S.W.3d 79, 87 (Tex.Crim.App. 2002), cert. denied, 123 S.Ct. 1901, 155 L.Ed.2d 824 (2003).

Possession
of a Controlled Substance

A person commits
the offense of possession of cocaine if she knowingly or intentionally
possesses the controlled substance.  See
Tex.Health & Safety Code Ann. ' 481.115(a) and (b)(Vernon
2003).  Possession is defined as Aactual care, custody, control, or
management.@  Tex.Health & Safety Code Ann. ' 481.002(38).  To support a conviction for unlawful
possession of a controlled substance, the State must prove that the accused (1)
exercised actual care, custody, control, and management over the contraband,
and (2) the accused knew the substance he possessed was contraband.  See Brown v. State,
911 S.W.2d 744, 747 (Tex.Crim.App. 1995); Menchaca v. State, 901 S.W.2d 640, 651 (Tex.App.--El Paso 1995, pet. ref=d).  By either direct or circumstantial evidence,
the State Amust
establish, to the requisite level of confidence, that the accused=s connection with the drug was more
than just fortuitous.@  Brown, 911 S.W.2d at
747.  








When
the defendant is not in exclusive possession or control of the place where the
contraband is found, as in this case, the State must prove independent facts
and circumstances affirmatively linking her to the contraband.  Hackleman v. State, 919 S.W.2d 440, 444 (Tex.App.--Austin
1996, pet. ref=d,
untimely filed).  An affirmative
link generates a reasonable inference that the accused knew of the contraband=s existence and exercised control over
it.  See Brown, 911 S.W.2d
at 747; Menchaca, 901 S.W.2d at 651.  These affirmative links may include:  (1) the accused=s
presence when the search was executed; (2) the contraband was in plain view;
(3) the contraband is in close proximity to and accessible by the accused; (4)
the accused was under the influence of a controlled substance when arrested;
(5) the accused was in possession of other contraband when arrested; (6) the
accused made incriminating statements when arrested; (7) the accused attempted
to flee; (8) the accused made furtive gestures; (9) there was an odor of the
contraband; (10) other contraband or drug paraphernalia was present; (11) the
accused owned or had the right to possess the place where the contraband was
found; (12) the place the drugs were found was enclosed; (13) the amount of
contraband; and (14) possession of weapons. 
See Lassaint v. State,
79 S.W.3d 736, 740-41 (Tex.App.--Corpus Christi 2002,
no pet.); Jones v. State, 963 S.W.2d 826, 830 (Tex.App.--Texarkana
1998, pet. ref=d).  The number of factors present is less
important than the logical force the factors have in establishing the elements
of the offense.  Hurtado v. State, 881
S.W.2d 738, 743 (Tex.App.--Houston [1st Dist.] 1994,
pet. ref=d).








Appellant concedes
the knowledge element of the offense was met and only challenges the
sufficiency of the evidence to establish she exercised care, custody, control,
and management over the contraband.  See
Brown,  911
S.W.2d at 747.  In this case, the State
introduced circumstantial evidence to establish affirmative links between
Appellant and the cocaine.  The evidence
established that Appellant is a joint owner of the residence, received mail at
the house, and had given her consent to search the home, an act showing her
control over the premises.  Appellant was
present when the officers searched her home, sitting in a living room.  Appellant directed the officers= attention to some of the contraband
found in the room and told them on the prior night she, her husband, and
another couple had engaged in a night of partyingand
that drugs were throughout the house.  In
searching the premises, the officers found numerous items of contraband
scattered all over the house, many of which were in plain view and had field
tested positive for cocaine.  In plain
view, the officers found an amount of cocaine on a plate on the kitchen counter
and on a coaster in the kitchen.  In the
living room, officers found a plastic bindle of cocaine under a couch
seat.  To Officer Alvarez, all the drug
paraphernalia indicated that it, presumably the drugs in the house, could not
have been done all in one night. 
Officers also found drug paraphernalia in the trunk of a vehicle
believed to be owned by Appellant.  From
the evidence presented, the jury could have inferred that the drug
paraphernalia found throughout the premises indicated Appellant=s use and possession of the cocaine
recovered by officers, particularly as several items of drug paraphernalia were
found both in plain view in common areas, such as the kitchen and living rooms,
as well as in the master bedroom, adjoining bathroom, and in a nearby closet,
which contained women=s
clothing.  Further, the jury could have
reasonably inferred that Appellant=s
conduct in contacting the police indicated a consciousness of guilt.  Viewing the evidence in the light most
favorable to the verdict, we conclude the evidence is legally sufficient to
affirmatively link Appellant to the cocaine and to sustain the conviction.








Turning to factual
sufficiency, Appellant argues that she candidly reported the drugs to a
neighbor and to the police and consented to the search, which indicated her
disavowal of possession.  The evidence,
however, shows that Appellant did not expressly admit or deny possession of the
drugs she wanted confiscated from her home. 
Appellant also points to the lack of other
affirmative links, such as lack of evidence that she used drugs, was in
personal possession of any drugs or drug paraphernalia, engaged in furtive
behavior, made incriminating statements, attempted to flee, nor was there an
odor of contraband on her person.  As
stated above, the number of factors present in any case is less important than
the logical force those factors have in establishing the elements of the
offense.  See Hurtado,
881 S.W.2d at 743. 
Having reviewed all the evidence, we find that the evidence is not so
obviously weak nor does the contrary evidence so overwhelmingly outweigh the
supporting evidence as to render the conviction clearly wrong and manifestly
unjust.  Accordingly, we hold the
evidence was both legally and factually sufficient to support the jury=s verdict.  Issues One and Two are overruled.

Jury
Charge

In Issue Three,
Appellant contends the trial court erred in including an instruction on the law
of parties in the jury charge over her objection.  Specifically, Appellant asserts that there is
no evidence to find she was criminally liable as a party.

Law
of Parties








A person acts as a
party to an offense if, Athe
offense is committed by his own conduct, by the conduct of another for which he
is criminally responsible, or by both.@  See Tex.Pen.Code Ann. '
7.01(a)(Vernon 2003). 
A person is criminally responsible as a party to an offense committed by
the conduct of another if the person acts with an intent to promote or assist
in the commission of the offense, and solicits, encourages, directs, aids, or
attempts to aid another person to commit the offense.  Tex.Pen.Code
Ann. ' 7.02(a)(2).  To establish
this theory of liability, the State must prove the illegal conduct of the
primary actor and that the accused acted with the intent to promote or assist
the commission of the offense.  Stroman
v. State, 69 S.W.3d 325, 329 (Tex.App.--Texarkana
2002, pet. ref=d).  In determining whether a defendant is a party
to an offense, the court may examine the events occurring before, during, or
after the offense is committed and may rely on the defendant=s actions showing an understanding and
common design to commit the offense.  See
Marable v. State, 85
S.W.3d 287, 293 (Tex.Crim.App. 2002).  An instruction on the law of parties may be
given whenever there is sufficient evidence to support a jury verdict that the
defendant is criminally responsible under the law of parties.  Ladd v. State, 3 S.W.3d 547, 564 (Tex.Crim.App. 1999), cert. denied, 529 U.S. 1070,
120 S.Ct. 1680, 146 L.Ed.2d 487 (2000).  In this case, Appellant was not indicted as a
party to the offense of possession of cocaine. 
However, in the jury=s
instructions and in the application paragraph of the charge, the trial court
included the law of parties liability theory.

Charge
Error








When a defendant
alleges a jury charge error, we must first determine whether there is any error
in the charge.  Hutch
v. State, 922 S.W.2d 166, 170 (Tex.Crim.App.
1996); Arline v. State, 721 S.W.2d 348,
351 (Tex.Crim.App. 1986).  If error exists, we must then determine
whether sufficient harm was caused by the error to warrant reversal.  Arline, 721 S.W.2d at 351.  If
the charge error was the subject of timely objection, reversal is required if
that error was calculated to injure the rights of the defendant thereby causing
Asome harm.@  Ovalle v. State, 13 S.W.3d 774, 786 (Tex.Crim.App.
2000).  Where the evidence clearly
supports a defendant=s
guilt as a principal actor, any error by the trial court in including an
instruction on the law of parties in the charge is harmless.  Ladd, 3 S.W.3d at
564-65.  The reasoning in support
of this result is if Athere
was no evidence tending to show appellant=s
guilt as a party, the jury almost certainly did not rely upon the parties instruction in arriving at its verdict, but rather
based the verdict on the evidence tending to show appellant=s guilt as a principal actor.@ 
Id. at 565.  

In our review of
the sufficiency of the evidence set out above, we have already concluded that
there was legal and factually sufficient evidence to show Appellant possessed
the cocaine found in the house as a principal actor.  Assuming, without deciding, that the trial
court=s
inclusion of a parties instruction was error, we find
error, if any, was harmless as there was sufficient evidence to sustain
Appellant=s
conviction as a principal actor.  See
id.; see also Cathey v. State, 992
S.W.2d 460, 466 (Tex.Crim.App. 1999), cert. denied,
528 U.S. 1082, 120 S.Ct. 805, 145 L.Ed.2d 678 (2000)(assuming without deciding error in law of parties
instruction and finding no error where evidence sufficient to show defendant
acted as a principal).  Issue Three is
overruled.

Accordingly, we
affirm the trial court=s
judgment. 

 

 

October 23, 2003

DAVID WELLINGTON CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]Appellant
not charged with cocaine found in the jacket.