**Omar HURTADO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–93–00101–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 12, 1994.

Frank Alvarez, Houston, for appellant.

John B. Hlmes, Jr./Alan Curry, Harris County, for appellee.

Before DUGGAN, HUTSON–DUNN and ANDELL, JJ.

## OPINION

DUGGAN, Justice.

After his motion to suppress evidence was overruled, appellant, Omar Hurtado, waived his right to a jury trial. Upon his plea of not guilty, the trial court found him guilty of possession of more than 400 grams of cocaine and assessed his punishment at 15–years confinement and a $5,000 fine.

In his first two points of error, appellant alleges the trial court erred in overruling his

motion to suppress because the evidence seized was the fruit of an illegal stop and an illegal search. In his third point of error, he argues that the evidence was insufficient to support the court's finding that he intentionally and knowingly possessed the contraband. We affirm.

Houston Police Officer Oscar G. Ortiz testified that while he was on patrol at about 5:30 p.m. on July 23, 1992, he saw an automobile being operated with a dealer's paper license tag. Ortiz checked the tag through his patrol car's computer and learned that several warrants were issued and outstanding under the tag. Ortiz stopped the vehicle, approached the driver's window, and asked appellant, the driver and sole occupant, for his operator's license. Appellant responded in Spanish that he had none and that he was from another country. Ortiz questioned appellant in Spanish and asked him for any kind of identification. Appellant said he had none, and told Ortiz that he had borrowed the vehicle from a friend. The name appellant gave Ortiz as his own was not on any of the warrants issued to drivers using the vehicle's paper dealer's tag.

During Ortiz's questioning, the 18 year-old appellant appeared very nervous and glanced six or seven times toward the passenger side of the vehicle by averting his eyes to the right without moving his head. He kept his hands on the steering wheel. Ortiz found appellant's behavior "unusual."

Concerned for his own safety, Ortiz instructed appellant not to move, walked around the vehicle, reached through the open passenger side window, and pushed the back of the seat forward several inches in order to check for a weapon. Ortiz then saw a clear white cellophane package sticking out from beneath the rear of the front passenger seat. Ortiz recognized the package as a typical brick of cocaine. He ordered appellant out of the vehicle, placed him under arrest, searched the vehicle, and recovered the package. It total weight was 995.2 grams, 622.9 grams of which was pure cocaine.

■■■ A trial court's ruling on a motion to suppress will not be set aside absent a showing of abuse of discretion. *Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim.App.1985);

*Santos v. State,* 822 S.W.2d 338, 339 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). To determine whether the trial court abused its discretion, the evidence is viewed in the light most favorable to the ruling. *Daniels v. State,* 718 S.W.2d 702, 704 (Tex.Crim.App. 1986). At the hearing on a motion to suppress, the trial judge is the sole fact finder and, as such, may believe or disbelieve all of or any part of any witness' testimony. *Taylor v. State,* 604 S.W.2d 175, 177 (Tex.Crim. App. [Panel Op.] 1980); *Santos,* 822 S.W.2d at 339. Any finding supported by the record will not be disturbed on appeal. *Id.*

### The stop

In his first point of error, appellant contends the trial court erred in overruling his motion to suppress and admitting evidence at trial that was the fruit of an illegal stop.

Appellant urges that outstanding warrants issued to persons using the dealer's paper license tag were insufficient to provide reasonable suspicion that criminal activity was afoot, or that appellant was connected to the activity; therefore, he reasons, the stop was illegal. He first argues that because the State failed at the suppression hearing to present any of the warrants, or any information as to who issued the warrants, there was no evidence of reasonable suspicion of criminal activity to justify the investigative stop. Alternatively, he argues, there was no description of any person to be arrested under any of the warrants to justify the seizure of appellant.

■■■ An officer may briefly stop a suspicious individual in order to determine his identity or maintain the status quo momentarily while obtaining more information. *Hoag v. State,* 728 S.W.2d 375, 380 (Tex.Crim.App. 1987). To justify such an initial detention, the officer must be able to point to specific and articulable facts which, in light of his experience or personal knowledge, together with inferences drawn from the facts, reasonably warrant the intrusion. *Id.* at 380. The "specific and articulable facts" must objectively support (1) a reasonable suspicion by the officer that some activity out of the ordinary is occurring or has occurred, (2) some

suggestion to connect the person detained with the unusual activity, and (3) some indication that the activity is related to a crime. *Id.*

▉▉▉ Here, Officer Ortiz initially stopped appellant's automobile because his license check through his patrol car computer showed there were outstanding warrants for several persons who had operated a motor vehicle using this particular dealer's tag. Ortiz's purpose in stopping appellant was to determine if he was a person named in any of the outstanding warrants. Ortiz's suspicion that appellant might be a person named on the warrants was reasonable. Ortiz's reasonable suspicion did not need to rise to the level of probable cause to believe appellant was the subject of one or more of the warrants in order to authorize him to stop appellant's car. *See Stone v. State,* 703 S.W.2d 652, 654 (Tex.Crim.App.1986).

▉▉▉ Appellant does not dispute that Officer Ortiz received information through his computer, as Ortiz testified. "A reasonable suspicion [to justify an investigative stop] may be based on articulable facts, even if such facts are ultimately shown to be inaccurate or false." *Kelly v. State,* 721 S.W.2d 586, 587 (Tex.App.—Houston [1st Dist.] 1986, no pet.) (police officer had reasonable suspicion to stop based on erroneous information that vehicle was stolen). The fact that appellant was not named in one of the outstanding warrants did not retroactively diminish Officer Ortiz's ability to stop appellant's vehicle and determine his identity and whether he was the subject of one or more of the warrants. Here, no warrant was introduced because a warrant was not ultimately the basis for appellant's arrest. Having stopped appellant, Ortiz was entitled to, and did, request appellant to present his driver's license and identification. TEX.REV.CIV.STAT.ANN. arts. 6687b, § 13 & 6701h, § 1B(a) (Vernon Supp.1994). By doing so, Ortiz promptly learned that appellant had no driver's license, for which he could be ticketed or arrested. TEX.CODE CRIM.P.ANN. art. 14.01(b) (Vernon 1977). Thus, the initial temporary detention was legal. We overrule appellant's first point of error.

## The search

Appellant asserts that the trial court erred by admitting evidence that was the fruit of an illegal search because Officer Ortiz's action in pushing the car's passenger seat forward exceeded the scope of a search incident to an investigative stop.

▉▉▉ A police officer investigating a suspect after a roadside stop may conduct a protective search of the automobile's passenger compartment if he has a reasonable belief, based upon specific and articulable facts and the inferences rationally drawn from those facts, that the detainee may pose a threat to him. *Michigan v. Long,* 463 U.S. 1032, 1050–51, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983); *Goodwin v. State,* 799 S.W.2d 719, 727–28 (Tex.Crim.App.1990). The search must be limited to those areas in which a weapon may be placed or hidden. *Michigan,* 463 U.S. at 1049, 103 S.Ct. at 3480. The police officer may conduct the protective search for weapons contemporaneously with a temporary detention when he observes conduct that leads him to reasonably conclude that a crime may be taking place and that the person with whom he is dealing may be armed and dangerous. *Worthey v. State,* 805 S.W.2d 435, 437 (Tex.Crim. App.1991).

▉▉▉ Officer Ortiz stated he thought appellant's behavior in making repeated furtive glances by averting his eyes toward the passenger seat area while not turning his head, was "unusual." Appellant claimed not to speak English, told Ortiz he was an alien, and claimed to have borrowed the car from a friend. He had no operator's license or personal identification, and was operating a vehicle with a paper dealer tag that had several outstanding warrants against its operator(s). Ortiz testified he looked into the car and moved the seat because he was in fear of his personal safety and wanted to be certain that appellant did not have a weapon within his reach. The area he searched was within the passenger compartment and was both suitable and accessible as a place for a driver to conceal a weapon. The trial court was justified in concluding that Officer Ortiz articulated reasonable grounds to fear for his person-

al safety and to conduct a weapons search for his own protection. We hold that the search was legal, and we overrule appellant's second point of error.

## Sufficiency of evidence

In his third point of error, appellant claims the evidence was insufficient to support the trial court's finding that he intentionally and knowingly possessed the cocaine found in the automobile.

■ In reviewing the sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A reviewing court must examine the unique facts of each case to determine if this standard is met. *Humason v. State,* 728 S.W.2d 363, 367 at n. 12 (Tex.Crim.App.1987).

■ To establish the unlawful possession of a controlled substance, the State must prove the defendant (1) exercised care, control, or management over the contraband, and (2) knew that what he possessed was contraband. *Cude v. State,* 716 S.W.2d 46, 47 (Tex.Crim.App.1986); *Classe v. State,* 840 S.W.2d 10, 12 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *Gonzales v. State,* 809 S.W.2d 778, 780 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd).

■ To establish appellant's control and knowledge of the cocaine, the State must prove more than that appellant was merely in the vicinity of the controlled substance. *Humason,* 728 S.W.2d at 365. To meet the mens rea requirement of a possessory offense, the State must provide "affirmative links" between the accused and the contra-

band, facts and circumstances in addition to mere presence that raise a reasonable inference of the accused's knowledge and control of the contraband. *Id.* at 365–66. Affirmative links may be proved by circumstantial evidence. *Thomas v. State,* 762 S.W.2d 721, 723 (Tex.App.—Houston [1st Dist.] 1988, no pet.).

■ Courts have identified numerous factors that constitute affirmative links. *See Gilbert v. State,* 874 S.W.2d 290 (Tex.App.—Houston [1st Dist.], 1994, n.w.h.); *Whitworth v. State,* 808 S.W.2d 566, 569 (Tex.App.—Austin 1991, pet. ref'd).[1] The number of factors present is not as important as the "logical force" or the degree to which the factors, alone or in combination, tend affirmatively to link the accused to the contraband. *Whitworth,* 808 S.W.2d at 569. Each case must be reviewed on its facts for evidence of sufficient affirmative links. *Id.*

■ Appellant argues that there is insufficient linkage to connect him to the brick of cocaine. We disagree. The following affirmative links raise the reasonable presumption that appellant knew of and controlled the cocaine: (1) appellant was the driver and sole occupant of the automobile containing the contraband; (2) the contraband was immediately accessible to appellant, situated under the adjacent passenger seat; (3) the large, extremely valuable quantity of cocaine, a near-kilo "brick," an amount not likely be misplaced or forgotten by an owner or person entrusted with its possession; and (4) appellant's nervousness and unusual conduct in the manner of his frequent glances toward the particular place where the contraband was found.

■ We agree with appellant's assertion that his mere presence in the vicinity of contraband is not enough to establish that appellant knew he possessed it. In *Huma-*

---

1. Factors that may establish affirmative links between accused and contraband include whether the contraband was: (1) in plain view; (2) conveniently accessible to accused; (3) in a place owned by accused; (4) in a car driven by accused; (5) found on the same side of the car as accused; (6) found in an enclosed space; and whether (7) the odor of the contraband was present; (8) paraphernalia to use the contraband was in view of or found on the accused; (9) conduct of the accused indicated a consciousness of guilt; (10) the accused has a special relationship to the contraband; (11) occupants of the automobile gave conflicting statements about relevant matters; (12) the physical condition of the accused indicated recent consumption of the contraband found in the car; and (13) affirmative statements connect the accused to the contraband. *Gilbert,* at 298.

son, 728 S.W.2d at 367, the Court of Criminal Appeals affirmed this Court's finding that there were insufficient affirmative links to establish that the defendant possessed the small amount of contraband there involved, a vial containing 3/100ths of a gram of cocaine. Humason was the driver and sole occupant of a vehicle in which the small vial was found in an open gym bag situated on the front floorboard on the passenger side. There, we found that the record lacked proof that Humason was aware of the controlled substance. *Id.* at 367.

Moreover, appellant correctly notes that in *Thomas* we reversed a conviction under circumstances nearly identical to those now before us. There, a police officer stopped the defendant for driving a car without headlights. 762 S.W.2d at 722. The defendant was the sole occupant of a car rented under another person's name. *Id.* at 723. The officer noticed that Thomas nervously looked downward and to the right, and then reached toward the middle of the seats. *Id.* Thomas, who spoke only Spanish, had no driver's license or proof of insurance. *Id.* The officer ordered Thomas out of the car and reached inside the car to retrieve a swizzle stick. *Id.* As he picked up the swizzle stick, he noticed small plastic bags of cocaine visible in the partially open ashtray. *Id.* Thomas also possessed $1,900 in cash. *Id.*

In reversing *Thomas,* which, like *Humason* was decided prior to *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991), we noted that furtive movements or gestures alone are insufficient evidence to prove guilt. *Thomas,* 762 S.W.2d at 723 (citing *Smith v. State,* 542 S.W.2d 420, 422 (Tex.Crim.App.1976)). We noted that Thomas' nervousness might reasonably be explained by the fact that he was stopped by a police office who spoke a language he did not understand. *Id.* at 723. Most importantly, however, we relied on the *absence* of other affirmative links, noting that there was no evidence that Thomas: (1) rented the car; (2) operated the car for any period of time; (3) was under the influence of drugs; (4) made any attempt to lock up, conceal, or destroy the cocaine; (5) possessed contraband on his person or elsewhere in the car; (6) left fingerprints on the cocaine; (7)

used the swizzle stick to sniff cocaine, (8) made an attempt to escape; or (9) made incriminating statements. *Id.* at 723–24. We concluded that the evidence of affirmative links between Thomas and the cocaine failed to exclude every other reasonable hypothesis except that of guilt, and that no rational trier of fact could therefore have reasonably found him guilty of intentional or knowing possession. *Id.* at 724.

Both *Humason* and *Thomas* were decided by applying first the "affirmative links" test and then the "reasonable hypothesis" test. *Humason,* 728 S.W.2d at 366; *Thomas,* 762 S.W.2d at 724. In *Geesa,* the court held that the reasonable hypothesis analytical construct is no longer a valid standard for appellate review of evidentiary sufficiency. *Geesa,* 820 S.W.2d at 159. In cases where the State relies only on circumstantial evidence, *Geesa* eliminated the requirement that when we review for sufficiency of the evidence, we consider every other reasonable hypothesis except that of the defendant's guilt. *Id.* Without a review based on the reasonable hypothesis requirement, *Humason* would have been decided differently, as the Court of Criminal Appeals noted:

> While a trier of fact *could* conclude from the combination of these circumstances that appellant knowingly exercised actual care, custody, control or management over the cocaine in the gym bag, it would be just as rational for that same trier of fact to conclude that appellant was entirely unaware of the presence of the cocaine. Without some evidence excluding the equally reasonable hypothesis that appellant was unaware of the presence of the cocaine, the trier of fact could not conclude *beyond a reasonable doubt* that appellant knowingly possessed the cocaine.

*Humason,* 728 S.W.2d at 366 (emphasis in original). Likewise, we acknowledged that *Thomas* would have been decided differently without a review based on the reasonable hypothesis test:

> As the Court of Criminal Appeals observed in *Humason,* a trier of fact *could* have rationally concluded from the evidence presented that appellant knowingly or intentionally exercised actual care, custody,

control, or management over the cocaine. However, it would be just as rational for that same trier of fact to conclude that appellant was simply made nervous by his sudden encounter with the police and was completely unaware of the presence of the cocaine and the swizzle stick in a car that he *could* have just borrowed from someone else.

*Thomas,* 762 S.W.2d at 724 (citations omitted) (emphasis in original).

Appellant argues that other judicially recognized linkage factors were not present: appellant did not own the car, and no evidence showed how long he had been driving it; he made no incriminating body movements or statements, no efforts to conceal or destroy the evidence and no attempt to escape; he exhibited no signs of being under the influence of drugs or alcohol; had no contraband on his person, and his fingerprints were not found on the cocaine.

Because our review is no longer based on whether the State disproves reasonable alternatives to a defendant's guilt, we need not consider affirmative link factors that are *absent* from the evidence. The only test we must apply is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789.

We find that a rational trier of fact could have found beyond a reasonable doubt sufficient affirmative links between appellant and the cocaine. We overrule point of error three.

We affirm the judgment of the trial court.