James Harmon Jaubert, Jr. aka James Harmon v. The State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-090-CR
No. 10-99-091-CR
No. 10-99-092-CR
No. 10-99-093-CR
No. 10-99-094-CR

     JAMES HARMON JAUBERT, JR.,
     AKA JAMES HARMON,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 372nd District Court
Tarrant County, Texas
Trial Court No. 0548270D
Trial Court No. 0594393A
Trial Court No. 0594394A
Trial Court No. 0594396A
Trial Court No. 0594398A
                                                                                                                
                                                                                                           
O P I N I O N
                                                                                                                
   
      James Jaubert, Jr., was charged with one count of murder and four counts of attempted
murder. See Tex. Pen. Code Ann. §§ 19.02, 15.01 (Vernon 1994). He pled guilty to each
charge and elected to have a jury assess punishment. Jaubert was sentenced to sixty years for
the murder charge, twenty years for one attempted murder charge, and ten years for each
additional attempted murder charge. He appeals, asserting only that he received ineffective
assistance of counsel. We will affirm the judgment.
      In his sole issue for review, Jaubert contends that his retained trial counsel “failed to
render effective assistance of counsel as required by the Sixth Amendment to the U.S.
Constitution and by Article 1, Section 10 of the Texas State Constitution.” It is undisputed
that these claims were not presented to the trial court in a motion for new trial or otherwise. 
We have determined that ineffective-assistance-of-counsel claims must be presented to the trial
court to be preserved for appellate review. Foster v. State, No. 10-99-41-CR, slip op. at 2
(Tex. App.—Waco December 22, 1999, no pet.) (citing Gonzalez v. State, 994 S.W.2d 369,
372-74 (Tex. App.—Waco 1999, no pet.)); Tex. R. App. P. 33.1(a).
      Jaubert’s case was transferred to this court by order of the Texas Supreme Court. There
are some who argue that we should apply the law of the court from which the case was
transferred to cases transferred out of one court of appeals and into another. We disagree. 
Because this case has been transferred to us, we apply our interpretation of Rule 33.1. 
Therefore, because this complaint has not been preserved as required by Rule 33.1 and
Gonzalez, we overruled Jaubert’s complaint.
 

      The judgment of the trial court is affirmed.

 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Davis,
          Justice Vance, and
          Justice Gray
          (Justice Gray concurring)
Affirmed 
Opinion delivered and filed March 15, 2000
Publish 



an>
      In his first point, Medina argues that the evidence is insufficient to affirmatively link him to
the amphetamine found in the trunk of the car. He claims the State failed to introduce evidence
linking him to the car he was driving and to the safe where the amphetamine was located.
      The Health and Safety Code provides that a person commits an offense if the person
knowingly or intentionally possesses amphetamine with intent to deliver. See Tex. Health &
Safety Code Ann. §§ 481.103(a)(3), 481.113(a) (Vernon Supp. 2001). In order to establish the
unlawful possession of a controlled substance, the State must prove that the accused knowingly
possessed the contraband in question. See Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim.
App. 1995); Harris v. State, 994 S.W.2d 927, 933 (Tex. App.—Waco 1999, pet. ref’d). The state
accomplishes this task with “affirmative links” demonstrating he was conscious of his connection
with the controlled substance and knew what it was. Id. Affirmative links tend to establish “that
the accused’s connection with the contraband was more than just ‘fortuitous’” Harris, 994
S.W.2d at 993 (quoting Brown, 911 S.W.2d at 747). 
      Factors that may establish affirmative links between the accused and contraband include
whether: (1) the contraband was in plain view; (2) the contraband was conveniently accessible to
the accused; (3) the contraband was in a place owned by accused; (4) the contraband was in a car
driven by accused; (5) the contraband was found on the same side of the car as accused; (6) the
contraband was found in an enclosed space; (7) the odor of the contraband was present; (8)
paraphernalia to use the contraband was in view of or found on the accused; (9) conduct of the
accused indicated a consciousness of guilt; (10) the accused had a special relationship to the
contraband; (11) occupants of the automobile gave conflicting statements about relevant matters;
(12) the physical condition of the accused indicated recent consumption of the contraband found
in the car; and (13) affirmative statements connect the accused to the contraband. Hurtado v.
State, 881 S.W.2d 738, 745 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d.). The number of
factors present is not as important as the "logical force" or the degree to which the factors, alone
or in combination, tend affirmatively to link the accused to the contraband. See Whitworth v.
State, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd).
      Ray Vasquez, manager of Club 2551, testified that after Medina was asked to leave the club
he went to a gold four-door sedan and opened the trunk. He further testified that Medina looked
inside the trunk for several minutes, closed the trunk, got in the car with Darnell and left the
scene. Vasquez testified that, as Medina was driving away, he fired several rounds from a
handgun into the air. The record reflects that Darnell owned the gold sedan Medina was driving.
Officer Grall testified that an inventory search of the trunk of the car produced several items,
including the amphetamine. Grall located an open safe and a holster for a semi-automatic handgun
in plain view on top of several articles of clothing. He could see several plastic bags and a soup
can with another plastic bag protruding from it inside the safe. Grall testified that the holster was
an exact match for the handgun found under the passenger seat of the car. 
      The record indicates that Medina initially opened the trunk where the amphetamine and drug
paraphernalia lay in plain view, and then drove the vehicle. Applying the affirmative links factors,
the record indicates that Medina: 1) exercised control over the trunk where the contraband was
located; 2) exercised control over the amphetamine by driving the car; 3) knew that the matter
possessed was amphetamine; and 4) viewed the paraphernalia. After reviewing this evidence in
the light most favorable to the verdict, we find the evidence is legally sufficient to affirmatively
link Medina to the amphetamine. Accordingly, point one is overruled.
Deadly Weapon Finding
       Medina claims in his second point that the evidence is insufficient to support the court’s
finding that he “used or exhibited” a deadly weapon. See Tex. Code Crim. Proc. Ann. art.
42.12 § 3g(a)(2) (Vernon Supp. 2001). He contends that his possession of a handgun is in no way
connected to the amphetamine found in the trunk of the car.
      When the judge is the trier of fact at the punishment stage of the trial, he has the authority to
make an affirmative finding if the facts show, and he believes, that the defendant himself used or
exhibited a deadly weapon, even if the jury has not answered a special issue. See Fann v. State,
702 S.W.2d 602, 604 (Tex. Crim. App.1985) (opinion on reh'g); Flores v. State, 690 S.W.2d
281, 283 (Tex. Crim. App.1985); Adams v. State, 40 S.W.3d 142, 146 (Tex. App.— Houston
[14th Dist.] 2000, pet. ref’d). Due course of law requires the State to give notice to an accused
of its intention to seek a deadly-weapon finding. See Ex parte Patterson, 740 S.W.2d 766, 776
(Tex. Crim. App. 1987); Jordan v. State, 1 S.W.3d 153, 158 (Tex. App.—Waco 1999, pet.
ref'd). "The State may give notice of its intent to seek a deadly weapon finding in one of two
ways: (1) by pleading the use or exhibition of a deadly weapon in the indictment; or (2) by filing
a separate pleading giving notice of such intent." Rachuig v. State, 972 S.W.2d 170, 177 (Tex.
App.—Waco 1998, pet. ref'd). Here, the State filed a separate pleading to give notice to Medina
of the intent to seek a deadly weapon finding.
      The offense of illegal possession of a controlled substance is susceptible to an affirmative
finding that the defendant used or exhibited a deadly weapon. See Patterson v. State, 769 S.W.2d
938, 941 (Tex. Crim. App. 1989). The term “used” extends to any employment of a deadly
weapon, even simple possession, if such possession facilitates the associated felony. Id. A deadly
weapon is “exhibited” where it is consciously displayed during the commission of the offense. 
Id. The Court of Criminal Appeals has stated that “one can ‘use’ a deadly weapon without
exhibiting it, but it is doubtful that one can exhibit a deadly weapon during the commission of a
felony without using it.” Id. A deadly weapon is “used” during the commission of the offense
of possession of contraband if it protects and facilitates the defendant’s care, custody, and
management of the contraband. Id.; see also Dimas v. State, 987 S.W.2d 152, 155 (Tex.
App.—Fort Worth 1999, pet. ref’d.).
      In this case, the police located a loaded handgun under the passenger seat of the automobile
which Medina was driving. The police also located a holster for a handgun near the amphetamine,
Vitamin B powder (cutting powder), and digital scales in the trunk of the car. Further, an
eyewitness saw Medina discharge the weapon. Viewing the evidence in the light most favorable
to the verdict, we find that the evidence is legally sufficient to support the court’s finding that the
handgun found under the passenger seat was used to facilitate Medina’s care, custody, and
management of the amphetamine as well as its distribution. See id.; Gale v. State, 998 S.W.2d
221, 225-26 (Tex. Crim. App. 1999). Point two is overruled.
Motion in Limine
      Medina argues in point three that the trial court improperly allowed Officer Grall to testify
about statements Medina made at the time of the arrest. The court granted Medina’s motion in
limine which prohibited any “alleged confession or statement of the defendant” without first
approaching the bench and obtaining a ruling as to their admissibility. During direct examination
of Officer Grall by the State, the following exchange took place:
Q: You didn’t make any effort to ask if the car was his or if it was here or anything like
that, correct?
 
A: I asked Mr. Medina about the car and they said it was their car. And he also made
mention that that was his wife.

      MR. HOWARD: Your honor, may we approach?

      THE COURT: Yes

            (At the bench, off the record)
 
THE COURT: Ladies and gentlemen, don’t consider the last portion of the officer’s
answer. The portion about his wife, don’t consider that.
      Medina argues that the court improperly allowed Officer Grall’s testimony. We disagree. 
The proper method of preserving error is objection and ruling by the court where testimony is
allegedly inadmissible or an answer is nonresponsive. See Tex. R. App. P. 33.1. In this case, we
find no objection by Medina on the record. Therefore, he has failed to preserve any error in the
admission of Officer Grall’s testimony. See Marin v. State, 851 S.W.2d 275, 278 (Tex. Crim.
App. 1993). Point three is overruled.
Jury Misconduct
      Medina argues in his fourth point that the jury improperly disregarded the trial judge’s
instruction not to consider Officer Grall’s testimony about Medina’s relationship with the
passenger of the car. Medina presented an affidavit from juror Christen Caudle in support of his
motion for new trial. Caudle states in an affidavit that the jury discussed testimony by Officer
Grall that the court specifically instructed them not to consider. Medina argues that Caudle’s
affidavit is sufficient proof of jury misconduct to warrant a new trial. We disagree.
      A motion for new trial based on jury misconduct must be supported by a juror's affidavit
alleging "outside influences" were brought to bear upon the jury. See Weaver v. Westchester Fire
Ins. Co., 739 S.W.2d 23, 24 (Tex.1987); Brantley v. State, 48 S.W.3d 318, 329 (Tex.
App.—Texarkana 1999, pet. ref’d.). Texas Rule of Evidence 606(b) states that “a juror may not
testify as to any matter or statement occurring during the jury’s deliberations.” Tex. R. Evid.
606(b). Rule 606(b) also prohibits any testimony of this nature from jurors by affidavit. Id. 
Under Rule 606(b), a juror may only testify: “1) whether any outside influence was improperly
brought to bear upon any juror; or 2) to rebut a claim that the juror was not qualified to serve.” 
Id. No “outside influence” or juror qualification issues are raised by Medina. Accordingly, we
find insufficient proof of juror misconduct to warrant a new trial. Point four is overruled.
      The judgment of the trial court is affirmed.
 
                                                                   REX D. DAVIS
                                                                   Chief Justice


Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed December 5, 2001
Do not publish
[CRPM]