Opinion issued June 30, 2011

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00460-CR

———————————

Michael Wayne Johnson, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 184th District Court

Harris County, Texas



Trial Court Case No. 981353

 



 

MEMORANDUM OPINION

          In
2004, appellant, Michael Wayne Johnson, pleaded guilty to the felony offense of
possession with intent to deliver a controlled substance, cocaine, weighing
more than 400 grams.[1]  The trial court deferred adjudication of
guilt and placed appellant on eight years’ community supervision.  The State subsequently moved to adjudicate
guilt, alleging that appellant had violated the terms and conditions of his
community supervision by committing a second offense of possession with intent
to deliver cocaine.  After the trial
court found the allegation true, it revoked appellant’s community supervision
and assessed punishment at twenty-five years’ confinement and a $5,000
fine.  In one issue, appellant contends
that the State did not present sufficient evidence to “link” appellant to the
cocaine, and, therefore, the trial court erroneously revoked appellant’s
community supervision.

          We
affirm.

Background

          On
July 16, 2004, appellant pleaded guilty to possession with intent to deliver
over 400 grams of cocaine.  Pursuant to
an agreed recommendation on punishment, the trial court deferred adjudication
of guilt, placed appellant on community supervision for eight years, and assessed
a $500 fine.  One of the terms and
conditions of appellant’s community supervision required him to avoid
committing an offense against the laws of Texas.  On February 19, 2010, the State moved to
adjudicate guilt, contending that appellant had violated the terms and conditions
of his community supervision by unlawfully possessing, with intent to deliver,
over 400 grams of cocaine.

          On
February 2, 2010, Houston Police Department (“HPD”) Officer S. Glaze was on his
regular night-shift patrol in a residential area of southeast Houston when he saw
a vehicle fail to stop at a stop sign.  Officer
Glaze testified that he turned on his headlights to stop the vehicle, and the
driver, later identified as Jason Perry, briefly stepped on the brakes and then
sped away down another street.  Perry pulled
into a driveway just before he reached the next intersection.  Officer Glaze testified that Perry
immediately left the car and started walking toward a yard separating two
houses.  The passenger, whom Officer
Glaze identified as appellant, opened his door and started to climb out of the
car.  Officer Glaze believed that the two
men “were going to try to either flee or do harm to [himself] and [his]
partner.”  He ordered Perry to get back
into the vehicle and ordered appellant to close his door.  Both men complied.

          As
Officer Glaze approached the rear driver’s side of the vehicle, he smelled
“what appeared to be burning marijuana.” 
He described this odor as “very pungent, very potent.”  When Officer Glaze did not see any burning
marijuana in plain view inside of the vehicle, he and his partner, Officer B.
Stewart, removed Perry and appellant from the vehicle and placed them in
handcuffs.  According to Officer Glaze,
Perry was “extremely nervous” and “apprehensive” about answering questions,
more so than the usual individual stopped by police officers.  Perry also had a “hard time” answering basic
questions, such as “Where are you coming from?” and “Where are you on your way
to?”  Officer Glaze observed that Perry
would not make eye contact with the officers and that he was trembling and
shaking.  Like Perry, appellant was
unable to tell Officer Glaze where he was coming from or where he was going.[2]  Officer Glaze testified that appellant also
appeared nervous and was “displaying some of the same traits” as Perry, but
Glaze also testified that appellant seemed “a little bit more calm.”  Officer Glaze stated that, based on the smell
of marijuana and Perry’s and appellant’s behavior, he believed that they were
engaging in criminal activity.

          During
the ensuing search of the vehicle, Officer Glaze discovered “highly pungent”
marijuana in bags in the center console of the car.  Officer Glaze also discovered what appeared
to be cocaine, located in a zipped-up backpack, sitting on the rear floorboard
behind the front passenger seat.  He
testified that, after he found the cocaine, appellant “[did not] want to
talk.”  He agreed with the prosecutor
that if appellant had not known about the cocaine in the backpack, he would
have expected appellant to react differently upon being confronted with the
cocaine.  Officer Glaze testified that,
in his experience, people who do not have knowledge of criminal activity
occurring in their presence “would be ready to basically cooperate with the
police because, from their standpoint, they have a position of innocence
they’re trying to maintain.”

          On
cross-examination, Officer Glaze acknowledged that Perry was driving a rental
car, although he did not know if Perry was the one who rented the car.[3]  Officer Glaze also testified that the cocaine
was zipped up inside the backpack and, thus, was not located in plain
view.  He also stated that Perry had
nearly $2,500 in cash in his pocket and that he found two prescription bottles
in Perry’s name in the backpack.

          Officer
Stewart testified that after he removed appellant from the vehicle, he asked
him about the burning marijuana that the officers had smelled.  Appellant “didn’t really respond,” he “just
kind of looked at [Stewart],” and he “wasn’t very verbal.”  According to Officer Stewart, “[appellant]
just didn’t appear like he wanted to answer any questions.”

          HPD
Narcotics Division Officer J. Scales testified that when determining if individuals
are involved in narcotics dealing or trafficking officers consider factors such
as whether the passengers give conflicting statements to basic questions and
whether they are using a rental car.  Officer
Scales, who was called to the scene after Officer Glaze discovered the cocaine,
stated that appellant appeared intoxicated, smelled like marijuana, and had
red, bloodshot eyes.[4]  He further testified that appellant did not
“appear surprised about what was going on” and that most people who are genuinely
unaware of the presence of drugs are “very surprised [and] argumentative” when
confronted with the drugs.

          Officer
Scales testified that the backpack contained four kilos of cocaine, several
“half kilogram” packages, and individual baggies of approximately
four-and-one-half ounces of cocaine, packaged for sale.[5]  He also stated that a large quantity of
cocaine has a distinctive “chemical” smell, and he was able to distinguish that
smell from the “strong” smell of marijuana inside the car.

          The
trial court found the allegation in the State’s motion to adjudicate guilt
true.  The court revoked appellant’s
community supervision and assessed punishment at twenty-five years’ confinement
and a $5,000 fine.  After the trial court
denied appellant’s motion for new trial, this appeal followed.

Standard of Review

          A
community supervision revocation proceeding is neither criminal nor civil in
nature; rather, it is an
administrative proceeding.  Cobb v. State, 851 S.W.2d 871, 873 (Tex.
Crim. App. 1993); Canseco v. State,
199 S.W.3d 437, 438 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).  At a revocation hearing, the State must prove
by a preponderance of the evidence that the defendant has violated a condition
of his community supervision.  Rickels v. State, 202 S.W.3d 759, 763–64
(Tex. Crim. App. 2006) (quoting Scamardo
v. State, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)); Canseco, 199 S.W.3d at 438. 
The State satisfies its burden if the greater weight of credible
evidence creates a reasonable belief that the defendant violated a condition of
his probation as alleged by the State.  Solis v. State, 589 S.W.2d 444, 447
(Tex. Crim. App. 1979); Armstrong v.
State, 82 S.W.3d 444, 448 (Tex. App.—Austin 2002, pet. ref’d).  Our review of an order adjudicating guilt and
revoking community supervision is limited to determining whether the trial
court abused its discretion in ruling that the defendant violated the terms of
his community supervision.  Rickels, 202 S.W.3d at 763 (quoting Cardona v. State, 665 S.W.2d 492, 493 (Tex.
Crim. App. 1984)); Duncan v. State,
321 S.W.3d 53, 56–57 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d).  We examine the evidence in the light most
favorable to the trial court’s order.  Duncan, 321 S.W.3d at 57; Canseco, 199 S.W.3d at 439.  As the trier of fact at a revocation
proceeding, the trial court judges the credibility of the witnesses and the
weight to be given to their testimony.  Armstrong, 82 S.W.3d at 448.

 

 

Sufficiency of Evidence of Possession

          Appellant
contends, in his sole issue, that the State failed to present sufficient
evidence that he possessed the cocaine found in the vehicle, and, thus, the
trial court abused its discretion when it revoked his community supervision.

To prove unlawful possession of a
controlled substance, the State must demonstrate that (1) the defendant
exercised care, custody, control, or management over the substance; and (2) the
defendant knew the matter possessed was contraband.  See
Tex. Health & Safety Code Ann.
§ 481.002(38) (Vernon 2010); Poindexter
v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).  The evidence, either direct or
circumstantial, “must establish, to the requisite level of confidence, that the
accused’s connection with the drug was more than just fortuitous.”  Poindexter,
153 S.W.3d at 405–06 (quoting Brown v.
State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)).  This rule is designed “to protect the
innocent bystander from conviction based solely upon his fortuitous proximity
to someone else’s drugs.”  Id. at 406.  Thus, when the defendant “is not in exclusive
possession of the place where the substance is found, it cannot be concluded
that the accused had knowledge of and control over the contraband unless there
are additional independent facts and circumstances which affirmatively link the
accused to the contraband.”  Id. (quoting Deshong v. State, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); see also Evans v. State, 202 S.W.3d 158,
162 (Tex. Crim. App. 2006) (“Mere presence at the location where drugs are
found is thus insufficient, by itself, to establish actual care, custody, or
control of those drugs.”); Armstrong,
82 S.W.3d at 449 (“More than the defendant’s mere presence near the drugs is
required, especially when several people are present or in possession of the
place where the drugs are found.”).  “The
mere fact that a person other than the accused might have joint possession of
the premises does not require the State to prove that the defendant had sole possession of the contraband, only
that there are affirmative links between the defendant and the drugs such that
he, too, knew of the drugs and constructively possessed them.”  Poindexter,
153 S.W.3d at 412 (emphasis in original); Cole
v. State, 194 S.W.3d 538, 548 (Tex. App.—Houston [1st Dist.] 2006, pet.
ref’d) (“The State need not prove exclusive possession of the contraband for
conviction.”) (citing Roberson v. State,
80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d)).

          The
State need not “exclude every reasonable hypothesis other than the defendant’s
guilt, but it must show facts and circumstances that, viewed in the totality of
the circumstances, indicate the defendant’s knowledge and control over the
drugs.”  Armstrong, 82 S.W.3d at 449. 
Texas courts have identified a non-exclusive list of possible
“affirmative links”:

(1) the defendant’s presence
when a search is conducted; (2) whether the contraband was in plain view; (3)
the defendant’s proximity to and the accessibility of the narcotic; (4) whether
the defendant was under the influence of narcotics when arrested; (5) whether
the defendant possessed other contraband or narcotics when arrested; (6)
whether the defendant made incriminating statements when arrested; (7) whether
the defendant attempted to flee; (8) whether the defendant made furtive
gestures; (9) whether there was an odor of contraband; (10) whether other
contraband or drug paraphernalia was present; (11) whether the defendant
owned or had the right to possess the place where the drugs were found; (12)
whether the place where the drugs were found was enclosed; (13) whether the
defendant was found with a large amount of cash; and (14) whether the conduct
of the defendant indicated a consciousness of guilt.

 

Evans, 202
S.W.3d at 162 n.12.  Additional link
factors include a defendant’s “lack of surprise or concern” during an
investigation and the amount of contraband discovered.  See
Fields v. State, 932 S.W.2d 97, 104 (Tex. App.—Tyler 1996, pet. ref’d)
(holding defendant’s “unnatural equanimity and lack of concern” is a link
factor); Bethancourt-Rosales v. State,
50 S.W.3d 650, 655–56 (Tex. App.—Waco 2001, pet. ref’d) (same); Robinson v. State, 174 S.W.3d 320, 328–29
(Tex. App.—Houston [1st Dist.] 2005, pet. ref’d) (considering amount of
contraband).  The Court of Criminal
Appeals cautioned that these factors are “not a litmus test,” but are “simply
some factors which may circumstantially establish the legal sufficiency of the
evidence to prove a knowing ‘possession.’” 
Evans, 202 S.W.3d at 162 n.12.  It is not the number of links that is
dispositive, but rather the logical force of all of the evidence, direct and
circumstantial.  Id. at 162.

          We
examine each case on its own facts.  Robinson, 174 S.W.3d at 326 (citing Hurtado v. State, 881 S.W.2d 738, 743
(Tex. App.—Houston [1st Dist.] 1994, pet. ref’d)).  A factor tending to establish sufficiency in
one particular set of facts may be of little value in another set of facts.  Id.  We need not consider affirmative link factors
that are absent from the evidence.  Batiste v. State, 217 S.W.3d 74, 80
(Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing Hurtado, 881 S.W.2d at 745); see
also Satchell v. State, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.]
2010, pet. ref’d) (“The absence of various links does not constitute evidence
of innocence to be weighed against the links present.”).

          Appellant
contends that he was not in close proximity to the backpack containing the
cocaine because the backpack was located on the rear floorboard behind the
passenger seat, and, as the front-seat passenger, he “did not have easy access
to it.”  Convenient access to the
contraband is a factor that may link the accused to contraband found in a
vehicle.  See Robinson, 174 S.W.3d at 326 (citing Deshong, 625 S.W.2d at 329 and Hawkins
v. State, 89 S.W.3d 674, 677 (Tex. App.—Houston [1st Dist.] 2002, pet.
ref’d)).  “Conveniently accessible” means
that the contraband is “within the close vicinity of the accused and easily
accessible while in the vehicle so as to suggest that the accused had knowledge
of the contraband and exercised control over it.”  Id.  In Robinson,
we held that the contraband, which was located in a factory compartment in the
back wall of the truck and accessible only by folding down the rear seat of the
truck, was “within the vicinity of and easily accessible to” the defendant, who
was the front-seat passenger.  Id. at 326–27; see also Medina v. State, 242 S.W.3d 573, 576–77 (Tex. App.—Waco
2007, no pet.) (holding contraband found under hood of vehicle was in close
proximity to defendant, who was asleep in back seat).

          Appellant
cites the Fort Worth Court of Appeals’ decision in Tucker v. State, 183 S.W.3d 501 (Tex. App.—Fort Worth 2005, no
pet.), for the proposition that items in the back seat are not accessible to
front seat passengers.  Tucker is factually
distinguishable.  In Tucker, the defendant, who had been sitting in the back seat,
placed a plastic baggie containing cocaine in between the rear seats.  Id.
at 510.  The Fort Worth court, in
affirming the defendant’s conviction, noted that this particular baggie could
not have been reached by either the driver or the front seat passenger.  Id.  Here, in contrast, the cocaine was found
inside a backpack located on the rear floorboard, directly behind the seat in
which appellant was sitting.[6]  This backpack was within appellant’s
reach.  We conclude that the location of
the cocaine relative to appellant inside the vehicle suggests that appellant
had knowledge of and exercised control over the contraband.  See
Robinson, 174 S.W.3d at 327; see also
Garcia v. State, 218 S.W.3d 756, 763 (Tex. App.—Houston [1st Dist.] 2007,
no pet.) (listing as affirmative link factor whether contraband was found on
same side of vehicle as where accused was sitting).

          The
State contends that appellant’s behavior during the stop indicates a
“consciousness of guilt” because appellant was nervous, was “reticent to answer
even basic questions,” and could not tell Officer Glaze where he had come from
and where he was going.  “Excessive
nervous behavior and unsettled demeanor may be examples of consciousness of
guilt.”  Lassaint v. State, 79 S.W.3d 736, 744 (Tex. App.—Corpus Christi
2002, no pet.); see also Hurtado, 881
S.W.2d at 743 (considering defendant’s nervousness and “unusual conduct” of
frequently looking toward area where contraband found as affirmative links).

          Officer
Glaze testified that Perry was “extremely nervous” and apprehensive about
answering questions, more so than the usual person when stopped by police
officers.  He also testified that
appellant was nervous as well, although he was “a little bit more calm” than
Perry.  Officer Glaze stated that
appellant was “probably” able to answer questions better than Perry, but he
noted that both Perry and appellant were unable to tell him where they were
coming from or where they were going.  He
testified that this behavior was “highly unusual” because most people, when
stopped by an officer, are able to provide this kind of basic information with
“almost no hesitation.”  When asked how
appellant responded to his questions, Officer Stewart testified:

He actually didn’t really
respond.  He just kind of looked at
me.  But he wasn’t—he just
wasn’t very verbal.  He was just kind of
looking around. . . .  [H]e just didn’t appear like he
wanted to answer any questions.

 

Thus, the State presented evidence that appellant
was nervous, uncooperative, and unable to answer basic questions about his
activities and destination, which, according to Officer Glaze, was “highly
unusual.”  We conclude that appellant’s
nervous and unusual behavior upon being stopped and questioned by the officers
demonstrates a consciousness of guilt, which establishes another link between
appellant and the cocaine.[7]  See
Evans, 202 S.W.3d at 162 n.12 (listing whether defendant’s conduct
indicates a consciousness of guilt as affirmative link factor); Hurtado, 881 S.W.2d at 743 (considering
defendant’s nervous and “unusual conduct” of frequently glancing at location of
contraband as linking factors).

          Similarly,
we may also consider a defendant’s “unnatural equanimity and lack of concern
throughout the temporary detention and the subsequent investigation” as an
affirmative link factor.  Fields, 932 S.W.2d at 104; see also Bethancourt-Rosales, 50 S.W.3d at
655 (“[L]ack of surprise or concern during a temporary detention and
investigation can suggest knowledge of the presence of contraband.”).  Here, Officer Scales testified that, after
the other officers discovered the contraband, appellant did not “appear to be
surprised about what was going on.”  He
further agreed that, in his experience, this behavior is not consistent with
that of someone who was genuinely unaware of the presence of contraband,
because individuals in that circumstance are generally “[v]ery surprised [and]
argumentative” when contraband is discovered. 
According to Officer Scales, appellant did not demonstrate the behavior
of one unaware of the contraband.  Cf. Armstrong, 82 S.W.3d at 449–50
(“[Officer] Childs testified that when he discovered the drugs, Armstrong
‘immediately asked how that got into her bag,’ a statement
that . . . could indicate she was unaware of the presence
of the drugs.”).  We therefore conclude
that appellant’s lack of surprise at the discovery of contraband is another
factor linking appellant to the cocaine.

          We
also consider the amount of contraband found in the presence of the defendant.  Robinson,
174 S.W.3d at 328.  “The power of this
factor generally increases as the amount of contraband found increases.  This factor, therefore, is more effective at
establishing an affirmative link when large quantities of contraband are
involved.”  Id. at 328–29 (citing Roberson,
80 S.W.3d at 740); see also Allen v.
State, 249 S.W.3d 680, 698 (Tex. App.—Austin 2008, no pet.) (“Where a large
quantity of contraband is involved, the factor is more effective in
establishing the requisite link.  It may
strengthen the inference that the accused was aware of the cocaine.”).  In Robinson,
we observed that two kilos of cocaine found in a compartment in the trunk “were
neither an ‘insignificant amount of cocaine,’ nor an amount small enough to be
concealed on one’s person.”  174 S.W.3d
at 329 (quoting Roberson, 80 S.W.3d
at 740).  We concluded that because that
quantity of cocaine was “too much for mere personal use,” the amount was
“strongly indicative of an affirmative link between [the cocaine] and
[Robinson.]”  Id.

          Similarly,
here, HPD officers recovered a total of 4,733 grams, or 4.7 kilos, of cocaine
from the backpack.  This amount of
cocaine far exceeds amounts generally intended for personal use.  See id.  We therefore conclude that the amount of
cocaine found in the backpack is “strongly indicative” of an affirmative link
between appellant and the cocaine.  Id.

          Furthermore,
“[t]he odor of contraband in a vehicle is an accepted factor which may
affirmatively link an accused to seized contraband.”  Id.
at 327 (citing Hurtado, 881 S.W.2d at
743 n.1); see also Evans, 202 S.W.3d
at 162 n.12 (listing whether there was an odor of contraband as affirmative
link).  Here, all three officers
testified that they smelled a strong odor of burning marijuana emanating from
the vehicle.  Officer Scales, the
narcotics officer, testified that, in addition to the odor of marijuana, he
also detected the distinct chemical odor of cocaine.  He agreed with the prosecutor that the
“strong” smell of marijuana did not “overpower” the smell of cocaine and that
“[one] could distinguish from both of them.” 
We thus conclude that the odor of the cocaine is an additional link
between appellant and the contraband.

An additional affirmative link is whether other contraband is
also present.  See Evans, 202 S.W.3d at 162 n.12; Batiste, 217 S.W.3d at 81. 
In Batiste, an officer
testified that he smelled burning marijuana “immediately” as he approached the
vehicle, and another officer testified that Batiste smelled like burnt
marijuana.  217 S.W.3d at 81.  Officers discovered, in addition to
methamphetamine, which was the charged offense, a bottle of Xanax, eight
“blunts,”[8]
and eighty grams of marijuana.  Id. 
We concluded that “the profusion of contraband found in the vehicle
increases the probability that Batiste was aware of its presence.”  Id.  Here, all three officers testified regarding
the strong smell of burning marijuana present both inside and outside of the
vehicle.  Officer Scales testified that
appellant smelled like marijuana.  Officers
discovered marijuana in the center console of the vehicle.  As in Batiste,
we conclude that the additional contraband in the vehicle “increases the
probability” that appellant was aware of its presence.  Id.

When determining whether a defendant
who was not in exclusive possession of the place where the contraband was found
possessed the contraband, we consider the totality of the circumstances.  See
Bethancourt-Rosales, 50 S.W.3d at 656. 
Here, appellant was a passenger in a car rented by Perry that contained
nearly five kilos of cocaine.  The
cocaine was located in an enclosed space, a backpack, in close proximity to and
easily accessible by appellant, who was sitting directly in front of where the
backpack was located on the rear floorboard. 
Both men were nervous, uncooperative, and unable to answer basic
questions regarding where they were coming from and where they were going,
which, according to Officer Glaze, was “highly unusual.”  Appellant did not “appear to be surprised” by
the discovery of contraband.  Officers
discovered nearly five kilos of cocaine, a quantity that far exceeds amounts
generally intended for personal use, and Officer Scales testified that he could
smell the distinct odor of cocaine beyond the “strong” smell of marijuana also
present.  Officers also discovered
marijuana inside the center console of the car.

          Appellant
contends that the facts in this case are “closely related” to those in Armstrong, in which the Austin Court of
Appeals held that the State failed to present sufficient evidence of
possession, and, thus, that the trial court abused its discretion in revoking
Armstrong’s probation.  82 S.W.3d at
449–50.  We disagree.

          In Armstrong, Armstrong, who was driving,
was involved in a car accident.  Id. at 446.  The investigating officer, Childs, who was
not the first officer on the scene, noticed that Armstrong’s sister-in-law,
Felicia, was holding a bag, and one of the deputies informed him that Armstrong
“was more interested in locating this purple bag . . . than
worrying about [her] children” who were also involved in the accident.  Id.  Later, at the emergency room, Childs observed
Felicia constantly standing or sitting near Armstrong and still holding the
bag.  Id.  Felicia gave her consent to search the bag,
which she said contained clothes, and Childs discovered a paper sack containing
cocaine amongst the children’s clothes.  Id. 
Armstrong immediately asked “how that got in her bag.”  Id.

          In
determining whether the State presented sufficient evidence of possession, the Austin
court noted that Childs did not see Armstrong hold the bag, he did not see her
make any furtive gestures toward the bag, he did not find any other contraband
on or near her, the contraband had no odor, and Armstrong did not appear to be
under the influence of any illicit drugs. 
Id. at 449.  Childs also did not testify regarding the
amount of time between the accident, when police officers first arrived at the
scene, and when he arrived at the scene, nor did he testify regarding how much
time elapsed between Armstrong’s arriving at the hospital and Childs’ arriving
and searching the bag.  Id. 
The State presented no evidence regarding whether Armstrong and Felicia
rode in the same ambulance, whether Felicia did anything while Armstrong was
treated at the scene, or whether anyone else had access to the bag.  Id.
at 450.  Furthermore, upon discovering
the cocaine, Armstrong immediately asked how that got into her bag, which
“could indicate that she was unaware of the presence of the drugs.”  Id.
at 449–50.  The Austin court concluded
that the affirmative links were “too weak to support the district court’s
finding that Armstrong violated her probation by intentionally and knowingly
possessing the drugs found in the purple bag.” 
Id. at 450.

          The
Austin court, in reversing the trial court’s revocation of Armstrong’s
community supervision, held that the only evidence linking Armstrong to the
cocaine was “(1) an unidentified deputy’s statement to Childs alleging that
before Childs arrived on the scene Armstrong ‘was more interested in locating
this purple bag . . . than worrying about the children,’ and
(2) Armstrong’s statement at the hospital that the bag was hers.”  Id.
at 449.  In contrast, as we have already
discussed, even though appellant was a passenger in Perry’s rental car, several
factors link him to the cocaine found by the officers in this case.  The nexus between appellant and the cocaine
discovered here is stronger than the nexus between Armstrong and the cocaine
found in her bag.  See id. at 449–50.

          We
thus conclude that the State met its burden of proving by a preponderance of
the evidence that appellant unlawfully possessed cocaine.  We therefore hold that the trial court did
not abuse its discretion in finding the allegation in the motion to adjudicate
guilt true and in revoking appellant’s community supervision.[9]

          We
overrule appellant’s sole issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Keyes and Higley.

Do
Not Publish.  Tex. R. App. P. 47.2(b).











[1]           Tex.
Health & Safety Code Ann. § 481.112(f) (Vernon 2010).





[2]
          Officer Glaze testified that
this behavior was “highly unusual,” because, in most traffic stops, individuals
are able to answer these basic questions with no hesitation.





[3]
          Appellant attached the rental
car records, demonstrating that Perry had rented the car, to his motion for new
trial.





[4]
          The trial court later admitted
hair follicle test results revealing that appellant had tested negative for the
presence of any controlled substances.

 





[5]
          HPD Criminalist Myra Cuevas
testified that the contraband seized from the vehicle tested positive for 4,733
grams of cocaine.





[6]
          We further note that whether the
contraband was found inside an enclosed space is another factor that courts
have identified as establishing an affirmative link.  See
Evans v. State, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); Robinson v. State, 174 S.W.3d 320, 327
(Tex. App.—Houston [1st Dist.] 2005, pet. ref’d).  Both the car itself and the zipped backpack
containing the cocaine are enclosed spaces. 
See Robinson, 174 S.W.3d at
327.  Thus, the fact that the cocaine was
discovered in an enclosed space is another link between appellant and the
contraband.





[7]
          Appellant argues that his
“suspicious” and nervous behavior is consistent with being nervous due to his
community supervision status.  Although
the evidence may support conflicting inferences, “we presume that the trier of
fact resolved any such conflict in favor of the prosecution.”  Howard
v. State, 972 S.W.2d 121, 124 (Tex. App.—Austin 1998, no pet.) (citing Turro v. State, 867 S.W.2d 43, 47 (Tex.
Crim. App. 1993)).





[8]
          A “blunt” is an altered cigar
containing marijuana.  See Batiste v. State, 217 S.W.3d 74, 78
(Tex. App.—Houston [1st Dist.] 2006, no pet.).





[9]
          Appellant argues that the
evidence affirmatively links Perry,
not appellant, to the cocaine because Officer Glaze discovered prescription
bottles in Perry’s name in the backpack with the cocaine, Perry was carrying a
large amount of cash, Perry was “extremely nervous” and more apprehensive than
appellant, and Perry, as the renter of the vehicle, had sole control and the
right of exclusive possession of the vehicle. 
We note that that State need not prove that the defendant had sole
possession over the contraband; rather, someone other than the defendant may
have joint possession as long as the State establishes links demonstrating that
the defendant knew of and constructively possessed the contraband.  See
Poindexter v. State, 153 S.W.3d 402, 412 (Tex. Crim. App. 2005); Cole v. State, 194 S.W.3d 538, 548 (Tex.
App.—Houston [1st Dist.] 2006, pet. ref’d) (“The State need not prove exclusive
possession of the contraband for conviction.”) (citing Roberson v. State, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st
Dist.] 2002, pet. ref’d)).