# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00260-CR

**Frank Ricci Flores, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT
## NO. A-12-0701-SA, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Frank Ricci Flores of possessing less than one gram of heroin and assessed a sentence of twelve years in prison. Flores contends that the evidence is insufficient to support the finding that he intentionally or knowingly possessed the heroin. We will affirm the judgment.

When reviewing the sufficiency of the evidence supporting a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. When faced with a record of historical facts that supports conflicting inferences, we must presume that the trier of fact resolved any such

conflicts in favor of the verdict and defer to that resolution. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Whether this evidence is direct or circumstantial, it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous—i.e. there are "affirmative links" between the accused and the drugs. *Id.* at 405-06; *see also Hurtado v. State*, 881 S.W.2d 738, 743 n.1 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (listing several factors showing affirmative links to contraband). The affirmative links rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. *Poindexter*, 153 S.W.3d at 406.

A police officer testified that he saw Flores drive his car in disregard of at least one stop sign and fail to indicate at least one turn. The officer initiated a traffic stop, and Flores pulled over to the side of the road. Flores opened the driver's side door instead of rolling down the window. He gave the officer his identification card and proof of insurance, while conceding that his driver's license was probably suspended and the insurance had expired. The officer said that he did not notice any odors consistent with narcotics or marijuana emanating from the vehicle, but he did notice two pill bottles in the well on the driver's door. The bottles were purple and opaque.

The officer asked what was in the bottles, and Flores said, "Nothing." The officer asked permission to look in the bottles, which Flores granted. The officer testified that the first

2

bottle was empty, but the second contained a small piece of heroin wrapped in foil and a yellow piece of paper. The officer then detained Flores and did a patdown search. As part of the search, Flores had his hands on top of a baseball cap on his head. The officer testified that, after watching the video of the search, he believed that Flores moved his hands in a way that appeared to be trying to make something fall out of the cap. A search of the car revealed a package of syringes in the glove compartment. When the officer later searched Flores at the jail, he discovered a second foil-wrapped piece of heroin tucked inside the sweatband of the cap Flores was wearing.

Carlota Menchaca, Flores's former girlfriend, testified that the heroin was hers. She stated that Flores had broken up with her because he did not want to be involved with someone who used heroin. Despite their breakup, Flores let her use his car and she paid for the insurance (although it had lapsed). She testified that she had driven the car from 11 a.m. until 2 p.m. on the day Flores was arrested. She said that she visited her mother, bought groceries, and then bought some heroin. She testified that she typically hid her heroin use from Flores and that she intended to use one piece and save the other. She testified that she hid one piece of heroin in a pill bottle and another in a baseball cap. She testified that she collects pill bottles, that the one she used was green, purple, or blue, and that she placed it in a compartment in the driver's door. She testified that the cap was a faded black Batman cap and was on the seat when she hid the heroin. She also stated that she had syringes in the car either in the glove box or the center console that she used to help treat an abscess and to make jewelry. She said she intended to retrieve the heroin later, but that Flores took the car before she did so. She testified that she called Flores about twenty times to return with the car, but he refused because he did not want to be late for his oilfield job near Midland.

3

Menchaca testified despite advice from counsel that she invoke her Fifth Amendment right to remain silent. She said that she needed to do the right thing. She said she learned that Flores was arrested on the day it occurred, but did not come forward for nearly two years in part because of her feelings about their breakup and his new girlfriend and in part because she hoped the charges would go away. She denied that Flores supports her financially, had given her money to testify, or had promised to take care of her ailing mother in exchange for her testimony. She testified that Flores was not around when she bought the heroin and that she did not tell him she had bought it.

Flores asserts that Menchaca's testimony against her attorney's advice and her penal interest shows that she is the real owner of the heroin and that his actions show his innocence. He argues that his cooperative attitude during the traffic stop and choices to open the driver's door and reveal the pill bottles, to permit the search of the pill bottles, and to leave the car with the heroin-laden cap on his head are inconsistent with knowledge that one bottle and the cap contained heroin.

We conclude that the affirmative links are sufficient to support the jury's verdict. Both pieces of heroin were within easy reach of Flores beside him in the car he was driving and on his head. *See Hurtado*, 881 S.W.2d at 743 n.1. The officer testified that Flores appeared, in retrospect, to be trying to make something fall out of his cap while he was detained, which is consistent with some knowledge of the presence of the heroin. While a jury could have viewed the evidence differently, we cannot say that no rational jury could have found that Flores intentionally and knowingly possessed the heroin in his car and in his cap.

We affirm the judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   July 15, 2015

Do Not Publish