**Opinion issued February 25, 2020**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-19-00344-CR**

———————————

**RAYMOND RUSSELL ASHLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 83790-CR**

---

## MEMORANDUM OPINION

A jury convicted Raymond Russell Ashley of the third-degree felony offense

of possession of cocaine[1] in an amount of one gram or more but less than four

---

[1] Cocaine is a "Penalty Group 1" drug in the Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE § 481.102(3)(D).

grams. *See* TEX. HEALTH & SAFETY CODE § 481.115(a), (c). The jury sentenced Ashley to two years' confinement in the Institutional Division of the Texas Department of Justice. In a single issue, Ashley contends that the evidence is legally insufficient to support his conviction. We affirm the trial court's judgment.

## Background

Early one morning, L. Nichols realized that someone in a Ford F-150 truck was following her as she was driving home. The truck continued to follow Nichols for about five to ten minutes. Nichols telephoned her mother who advised her to call police. Nichols called 911. The 911 operator told Nichols to pull into the Angleton Police Department's parking lot and wait for officers to meet her. Nichols pulled into the parking lot around 1:00 A.M. and parked her car. The truck parked behind Nichols, partially blocking her in.

Corporal C. Castellow immediately approached the driver of the truck and asked for his driver's license. Castellow took Ashley's license to Nichols and asked her if she knew him. Nichols denied knowing Ashley. Castellow requested Nichols's contact information and told her that she was "free to go."

According to Castellow, he returned to Ashley to continue his investigation "for safety reasons." Ashley stepped out of the truck at Castellow's request. Ashley appeared "jittery" and his "body language," "demeanor," and "fast movements"

2

were not normal. Castellow patted Ashley down. Ashley volunteered that he had a firearm in his waistband and an expired handgun license.[2]

Ashley explained why he was following Nichols. Ashley stated that he drove first to Conroe and then to Pasadena to visit two friends, but neither friend was at home when he arrived. While he was driving back to Angleton, Ashley received a message from Chantel, a woman he was "pursuing." Chantel suggested that Ashley meet her "at the bridge over the railroad tracks" to "hook up." They had never met at this location before. Ashley parked at the bridge, waited for 45 minutes while listening to music, and left when Chantel did not show up. He then saw a car drive past his truck and the driver waved at him. Based on this gesture, he believed the driver was Chantel. He was unfamiliar with Chantel's car because she "has various vehicles." Ashley "sped up whenever she did" to catch up with her vehicle. Ashley stated that he followed the car into the Angleton Police Department parking lot with the thought that Chantel must know someone at the police station and probably planned to park her car there to get into his truck.

After speaking with Ashley for "a significant amount of time," Castellow conducted a horizontal gaze nystagmus test to determine Ashley's level of intoxication and concluded that Ashley's performance on this test did not show

---

[2]     *See* TEX. GOV'T CODE § 411.183 (governing expiration of a license to carry a handgun).

intoxication for alcohol. Ashley told Castellow that he had not consumed alcohol. Based on Ashley's behavior and demeanor, Castellow wanted to ensure Ashley had not consumed intoxicating substances other than alcohol.

After receiving consent to search Ashley's truck, Castellow smelled marijuana and saw "pieces of green leafy substance" on the driver's side floor, which Ashley stated was "possibly marijuana." Castellow also found marijuana in a metal tin located inside a blue duffle bag behind the driver's seat. When asked if anyone in the truck had used marijuana recently, Ashley told Castellow that his brother might have.[3] Although he suggested the marijuana was his brother's, Ashley told Castellow that "everything inside the vehicle was his [own] property." Castellow also found an herb grinder as well as rolling papers. Castellow then placed Ashley under arrest for carrying a handgun while in possession of marijuana, which is a criminal offense, and took him into the jail inside the police department.[4]

---

[3]     Ashley testified that the morning before, his younger brother whom he had not seen in five years asked to borrow his truck. Because they had just had a "family celebration" and because he felt "sympathy" for his brother, Ashley allowed him to borrow his truck for a few hours. According to Ashley, his brother returned his truck to him around 3:00 p.m.

[4]     *See* TEX. PENAL CODE § 46.02(a-1)(2)(A) (criminalizing carrying weapons while engaging in criminal activity, other than a Class C misdemeanor or a traffic or boating violation).

Castellow performed an inventory search because the truck would be impounded and he wanted to protect Ashley's personal property from theft. In the blue duffle bag where he had found the marijuana, Castellow discovered a white powdery substance, which tested positive for cocaine when he conducted a field test. He also found a spare firearm magazine that matched the type of handgun that Ashley admitted to carrying. He found syringes and spoons in the same bag. In addition, Castellow found a locked container in the truck. He took the container to Ashley and asked for the "combination so it wouldn't be damaged." Ashley provided it to him, and in the container he found a white, powdery substance resembling cocaine inside a small bag. After taking photographs of the evidence and completing an inventory report, Castellow concluded his search.

Castellow submitted the drug evidence to the Brazoria County Sheriff's Office Crime Laboratory. H. Balser, a chemist with the laboratory, tested both substances. The lab results confirmed that the green leafy substance was marijuana and the white powdery substance in the tin and in the locked container was cocaine with an aggregate weight of just under three grams.

At the close of evidence, the jury found Ashley guilty of possession of cocaine in an amount of one gram or more but less than four grams and sentenced him to two years' confinement. This appeal followed.

**Sufficiency of the Evidence**

Ashley argues the evidence was legally insufficient to prove, beyond a reasonable doubt, that he had exercised "actual care, custody, [and] control over the cocaine" and the evidence "does not affirmatively link [him] to the cocaine in order to establish requisite knowledge."

## A.    Standard of review

We review Ashley's challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Cary v. State*, 507 S.W.3d 761, 765 (Tex. Crim. App. 2016). Under that standard, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19; *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). The jury is the sole judge of the credibility of witnesses and the weight to give testimony. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all the evidence or testimony proffered, and weigh the evidence as it sees fit. *See Galvan-Cerna v. State*, 509 S.W.3d 398, 403 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Inconsistencies in the evidence are resolved in favor of the verdict. *See Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017).

6

Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In circumstantial-evidence cases, it is unnecessary that every fact and circumstance "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). On appeal, the same standard of review is used for both circumstantial and direct-evidence cases. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

## B. Applicable law

The offense Ashley was convicted of criminalizes the "knowingly or intentionally" possession of a controlled substance, including cocaine, weighing more than one gram but less than four grams. *See* TEX. HEALTH & SAFETY CODE § 481.115(a), (c); *see also id*. § 481.102(3)(D). The State must prove beyond a reasonable doubt that the defendant (1) exercised care, control, and management over the contraband and (2) knew the substance was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). Control and knowledge of a controlled substance requires more than a defendant's mere presence in the immediate vicinity. *Hurtado v. State*, 881 S.W.2d 738, 743 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). To meet the mens rea requirement of a possession

offense, the State must establish "affirmative links" between the defendant and the contraband, through direct or circumstantial evidence, that demonstrate the defendant's connection with the substance was "more than fortuitous." *Evans*, 202 S.W.3d at 161.

Courts consider many non-exhaustive factors in determining whether an affirmative link exists. Among the factors to be considered in determining whether an affirmative link exists are whether the drugs were (1) in plain view, (2) conveniently accessible to the defendant, (3) in a place owned by the defendant, (4) in a car driven by the defendant, (5) found on the same side of the car as the defendant, or (6) found in an enclosed space; whether (7) the drug's odor was present, (8) drug paraphernalia was in view of or found on the defendant, (9) the defendant's conduct suggested a consciousness of guilt, (10) the defendant had a special relationship to the drug, (11) the car's occupants gave conflicting statements about relevant matters, (12) the physical condition of the defendant suggested recent consumption of the drug found in the car; and whether (13) affirmative statements connected the defendant to the drug. *See Roberson v. State*, 80 S.W.3d 730, 735 n.2 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (citing *Hurtado*, 881 S.W.2d at 743 n.1); *Bates v. State*, 155 S.W.3d 212, 216 (Tex. App.—Dallas 2004, no pet.); *Trejo v. State*, 766 S.W.2d 381, 385 (Tex. App.—Austin 1989, no pet.).

The number of factors present is not as important as the logical force or the degree to which the factors, alone or in combination, tend to affirmatively link the defendant to the contraband. *See Espino-Cruz v. State*, 586 S.W.3d 538, 544 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd). Moreover, the link need not be so strong as to preclude every other reasonable explanation except his guilt. *See Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995) (en banc).

Evidence that shows the defendant jointly possessed the contraband with another is sufficient to sustain a conviction. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985) (en banc). "[W]hen the theory of prosecution is that the accused or another acted together in possessing a narcotic drug, the evidence must *affirmatively link* the accused to the contraband in such a manner that it can be concluded that he had knowledge of the contraband as well as control over it." *Martin v. State*, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988) (en banc). Circumstances that support joint possession are: (1) presence when the search was executed; (2) proximity to and accessibility of the contraband; (3) furtive gestures; (4) presence of other contraband; (5) defendant's right to possession of the place where contraband was found; and (6) drugs found in an enclosed place. *Chavez v. State*, 769 S.W.2d 284, 288–89 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd).

9

**C.**    **The evidence was legally sufficient that Ashley knowingly or intentionally possessed cocaine**

Ashley contends that the evidence was legally insufficient to establish that he knowingly or intentionally possessed cocaine because his brother may have placed the cocaine in his bag without his knowledge when he borrowed his truck. Castellow testified that Ashley's "jittery" and "fast movements" led Castellow to ask Ashley for consent to conduct a search. Ashley was present when the search was executed and told Castellow that he owned the contents in his truck. Castellow found a blue duffle bag behind the driver's seat, within Ashley's reach. A spare handgun magazine was inside the duffle bag. This magazine matched the handgun that Ashley admitted he had in his waistband when Castellow first encountered him. Thus, the blue duffle bag circumstantially links Ashley to its contents, including the cocaine. And, most importantly, the jury was entitled to disbelieve Ashley's explanation that his brother, whom he had not seen in five years, borrowed his truck and placed cocaine, marijuana, and drug paraphernalia in Ashley's bag. *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018).

Ashley also contends that the evidence that he knowingly or intentionally possessed cocaine was legally insufficient because Castellow may have planted the cocaine on him in "retaliation" for a "civil rights report" he filed against a "government agency." The jury determines witness credibility and reasonably could have disbelieved Ashley's testimony and credited Castellow's account of the

events. *Febus*, 542 S.W.3d at 572. Castellow found cocaine in a bag inside a locked container during the inventory search. Ashley knew the combination to unlock the container and voluntarily provided it to Castellow. Ashley's knowledge of this code supports an inference that the box was his and he owned and controlled any and all items located inside the locked box. *See Boughton v. State*, 643 S.W.2d 147, 149 (Tex. App.—Fort Worth 1982, no pet.) (holding that methamphetamine located in key box attached to steering column was affirmatively linked to appellant where appellant was the sole occupant of the vehicle and the box was located on the appellant's side of the car); *Fenlon v. State*, No. 01-01-00062-CR, 2002 WL 31835768, at \*2 (Tex. App.—Houston [1st Dist.] Dec. 19, 2002, pet. ref'd) (mem. op., not designated for publication) (describing defendant's knowledge of combination to safe in room where cocaine was found as an affirmative link).

Although Ashley contends that the cocaine may have belonged to his brother or may have been planted by Castellow, the jury need not accept as true his version of the facts. *See King v. State*, 710 S.W.2d 110, 114 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd); *Coleman v. State*, 113 S.W.3d 496, 502 (Tex. App.—Houston [1st Dist.] 2003), *aff'd on other grounds*, 145 S.W.3d 649 (Tex. Crim. App. 2004) (concluding that evidence is not insufficient merely because appellant offered a different explanation for the facts). Likewise, the State need not exclude

11

every other reasonable hypothesis except Ashley's guilt. *See Montgomery*, 369 S.W.3d at 192; *Stoutner v. State*, 36 S.W.3d 716, 722 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (op. on reh'g) (citation omitted). The logical force of the circumstantial evidence, coupled with reasonable inferences from it, supports the jury's determination that, beyond a reasonable doubt, Ashley exercised actual care, custody, control, and management of the cocaine recovered from the duffle bag and the container to convict him for possession of the cocaine. In sum, the jury heard that the police found cocaine inside a locked box, for which Ashley had the combination. The box was within Ashley's reach as the only person in his car. The car contained marijuana in plain view. Cocaine, marijuana, and drug paraphernalia were also found in the car. The jury did not have to accept Ashley's competing explanations that the police may have planted the cocaine in retaliation for his civil rights complaint or that the cocaine was his brother's.

The evidence is also legally sufficient to support the jury's determination that Ashley knew the cocaine was contraband. Along with the loose cocaine and the cocaine found in the container, Castellow also found syringes, spoons, rolling papers, and an herb grinder in the duffle bag. *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995) (holding that drug paraphernalia in home with contraband supported conclusion the defendant knew he possessed cocaine); *Barbosa v. State*, 537 S.W.3d 640, 646–47 (Tex. App.—San Antonio 2017, no pet.) (affirming drug

12

possession conviction where drug paraphernalia was present in addition to the narcotics). Moreover, Castellow found other contraband, namely, marijuana, on the driver's side floor and in a metal tin inside the duffle bag. *See Evans*, 202 S.W.3d at 162 n.12, 163–65 (considering presence of other contraband and narcotics paraphernalia an affirmative link); *Hargrove v. State*, 211 S.W.3d 379, 386 (Tex. App—San Antonio 2006, pet. ref'd) (concluding presence of narcotics paraphernalia, including digital scale, and weapons in house constituted affirmative links).

When considered in the light most favorable to the verdict, we conclude there is legally sufficient evidence to support the jury's finding affirmatively linking Ashley to the cocaine. *See, e.g.*, *State v. Derrow*, 981 S.W.2d 776, 779 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). Legally sufficient evidence supports the determination that Ashley's connection with the cocaine was "more than fortuitous." *Evans*, 202 S.W.3d at 161.

## Conclusion

We affirm the trial court's judgment.

Sarah Beth Landau
Justice

Panel consists of Justices Kelly, Landau, and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).