Opinion issued October 18, 2007








 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00401-CR






ROBERT EARL WILLIAMS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 208th District Court

Harris County, Texas

Trial Court Cause No. 981325






MEMORANDUM OPINION


 A jury convicted appellant, Robert Earl Williams, of possession with intent to
deliver cocaine weighing more than one gram and less than four grams. (1) Appellant
pleaded true to both enhancement paragraphs alleged in the indictment, and the trial
court sentenced him to imprisonment for 30 years. In six points of error, appellant
argues that the evidence is legally and factually insufficient to show that (1) he
knowingly possessed a controlled substance (a) weighing less than one gram or
(b) weighing more than one gram and less than four grams and (2) he possessed a
controlled substance with intent to deliver.

 We affirm.

Background

 In March 2004, Officer L. Byrd of the Houston Police Department ("HPD")
arranged for a confidential informant to make a controlled buy of cocaine from
appellant's residence in Houston, Texas. As the informant was buying the cocaine,
Officer Byrd waited in his undercover car. The informant told Officer Byrd that the
man who sold him the cocaine was named "Bobby," had a dark brown complexion
and salt and pepper braided hair, was between 50 and 55 years of age, was 5' 6" to 5'
8" in height, and weighed 145 to 165 pounds. After the controlled buy, Officer Byrd
conducted surveillance of appellant's residence and, within 48 hours of the controlled
buy, obtained a search warrant for the premises. 

 On March 19, 2004, Officer Byrd, along with his narcotics squad, executed the
warrant at appellant's residence. As the police arrived at the scene, appellant, who
matched the description of "Bobby" given by the informant, and five other people
were sitting in a white Dodge Ram pickup truck in front of the residence. (2) The police
parked their raid van behind the vehicle. As they approached the pickup truck, they
witnessed the driver, Ricky Densen, "toss an item out of the vehicle with his left
hand." The item was a plastic baggie containing "drugs." (3)

 The officers ordered the occupants out of the truck and patted them down, but
found no weapons or contraband. The officers then proceeded to announce
themselves and entered the house to execute the search warrant. While those officers
were securing the residence, Officer Byrd informed appellant of his legal rights and
interviewed him. When Officer Byrd asked appellant whether he had any narcotics
in the house, appellant responded that "he did sell narcotics, but he was all sold out
and there should not be any in the house."

 While Officer Byrd was interviewing appellant, an officer with a trained dog
entered the residence and discovered a pill bottle bearing appellant's name located
in an armoire in appellant's bedroom. (4) The dog also found a second pill bottle that
did not bear appellant's name in a cup on a shelf built into the headboard of the bed
in his bedroom. Both pill bottles contained substances that field tested positive for
cocaine. The substances were later taken to the HPD crime lab and tested by forensic
scientist K. Carpenter, who testified that the pill bottle with appellant's name on it
contained 0.4 grams of 93% pure crack cocaine and the pill bottle not bearing
appellant's name contained 2.8 grams of 85% pure crack cocaine, totaling 3.2 grams. 
Both Officer Byrd and Sergeant R. Zaled testified that this amount of cocaine is
consistent with distribution rather than personal use. Sergeant Zaled also testified
that the manner in which the cocaine was packaged was consistent with distribution.
In addition to finding cocaine in appellant's bedroom, the officer with the dog also
found marijuana in a jacket pocket in the hall closet. The officers also found two
pieces of mail that were addressed to appellant at that address. (5)

Standard of Review

 When an appellant challenges both the legal and factual sufficiency of the
evidence, we must first determine whether the evidence was legally sufficient to
support the verdict. Harmond v. State, 960 S.W.2d 404, 406 (Tex. App.--Houston
[1st Dist.] 1998, no pet.).

 Legal Sufficiency

 We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. 
King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Westbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000). Although our analysis considers all the
evidence presented at trial, we may not re-weigh the evidence and substitute our
judgment for that of the fact finder. King, 29 S.W.3d at 562. 
 Factual Sufficiency

 We review the factual sufficiency of the evidence by viewing all of the
evidence in a neutral light, and we will set the verdict aside only if the evidence is so
weak that the verdict is clearly wrong and manifestly unjust or the verdict is against
the great weight and preponderance of the evidence. Johnson v. State, 23 S.W.3d 1,
10-11 (Tex. Crim. App. 2000). Regarding the second basis for a finding of factual
insufficiency, "an appellate court must . . . be able to say, with some objective basis
in the record, that the great weight and preponderance of the (albeit legally sufficient)
evidence contradicts the jury's verdict before [the court] is justified in exercising its
appellate fact jurisdiction to order a new trial." Watson v. State, 204 S.W.3d 404, 417
(Tex. Crim. App. 2006) (emphasis omitted).

Possession Legal Sufficiency

 In his first and third points of error, appellant argues that the evidence is legally
insufficient to show that he exercised actual care, control, or management over the
cocaine.

 Appellant was charged with the knowing possession of more than one gram but
less that four grams of cocaine with intent to deliver. See Tex. Health & Safety
Code Ann. § 481.112 (Vernon Supp. 2003). To prove unlawful possession of a
controlled substance, the State must prove that the accused (1) exercised care,
custody, control, or management over the substance, (2) was conscious of his
connection with it, and (3) knew what it was. See id. § 481.002(38) (Vernon 2003),
§ 481.112; Swarb v. State, 125 S.W.3d 672, 684 (Tex. App.--Houston [1st Dist.]
2003, pet. dism'd). When contraband is not found on the accused's person or when
the accused is not in exclusive possession of the place where the contraband is found,
we cannot conclude that the accused had knowledge of and control over the
contraband unless the State established a link (6) between the accused and the
contraband--i.e., independent facts and circumstances that link the accused to the
contraband so as to suggest that the accused had knowledge of the contraband and
exercised control over it. (7) Rhyne v. State, 620 S.W.2d 599, 601 (Tex. Crim. App.
1981); Robinson v. State, 174 S.W.3d 320, 324-25 (Tex. App.--Houston [1st Dist.]
2005, pet. ref'd); Swarb, 125 S.W.3d at 684. The link may be established through
either direct or circumstantial evidence. See Brown v. State, 911 S.W.2d 744, 746-47
(Tex. Crim. App. 1995).

 The link terminology does not constitute a unique legal rule, but is only a
shorthand way of expressing what must be proven to establish that narcotics were
possessed knowingly or intentionally. Id. at 747. Texas courts have identified
several factors that may help to establish a link between the accused and the
contraband, including whether (1) the defendant was present when the narcotics were
found; (2) the contraband was in plain view; (3) the defendant was in proximity to the
narcotics and had access to them; (4) the defendant was under the influence of
narcotics when arrested; (5) the defendant possessed other contraband; (6) the
defendant made incriminating statements when arrested; (7) the defendant attempted
to flee; (8) the defendant made furtive gestures; (9) the odor of the narcotic found was
present; (10) the defendant owned or had the right to possess the place where the
narcotics were found; (11) the narcotics were found in an enclosed place; (12) the
amount of narcotics found was significant; (13) the defendant possessed a weapon;
and (14) the defendant possessed a large amount of cash. Swarb, 125 S.W.3d at 684. 
Although several factors relevant to establishing the necessary link have been
identified, the number of factors supported by the evidence is not as important as the
"logical force" they collectively create to prove that a crime has been committed. 
Roberson v. State, 80 S.W.3d 730, 735 (Tex. App.--Houston [1st Dist.] 2002, pet.
ref'd) (quoting Hurtado v. State, 881 S.W.2d 738, 743 (Tex. App.--Houston [1st
Dist.] 1994, pet. ref'd)). Evidence that links the accused to the narcotics must
establish a connection that was more than fortuitous. Brown, 911 S.W.2d at 747.

 When police arrived at the residence to execute the search warrant, appellant
was in a truck parked in front of the house. Police searched the residence and found
two plastic pill bottles in appellant's bedroom. One contained 0.4 grams of cocaine
and bore appellant's name, and a second contained 2.8 grams of cocaine, for a total
of 3.2 grams. Both Officer Byrd and Sergeant Zaled testified that this amount of
cocaine is consistent with distribution rather than personal use. Sergeant Zaled also
testified that the manner in which the cocaine was packaged was consistent with
distribution. Police also found two pieces of mail addressed to appellant at that
address. Furthermore, appellant--who matched the informant's description of the
man who had sold cocaine from that address only days before--told Officer Byrd that
he had previously sold drugs, but that he was currently out.

 Despite the existence of these factors, appellant argues that there were not
enough factors linking him to the cocaine. Specifically, appellant points to various
factors courts have used in other cases to show an affirmative link between the
accused and narcotics that are missing in the present case. As we have already stated,
however, the number of existing factors supported by the evidence is not as important
as the "logical force" they collectively create to prove that a crime has been
committed. See Roberson, 80 S.W.3d at 735-36 ("A factor that contributes to
sufficiency in one situation may be of little value under a different set of facts. We
will examine all the factors possibly linking appellant to the cocaine. . . .") (citations
omitted).

 Viewing all the foregoing evidence in the light most favorable to the verdict,
we conclude that a jury could have found beyond a reasonable doubt that appellant
exercised care, custody, control, or management of the cocaine. See Wesbrook, 29
S.W.3d at 111; King, 29 S.W.3d at 562.

 We overrule appellant's first and third points of error.

 Factual Sufficiency

 In his second and fourth points of error, appellant argues that the evidence is
factually insufficient to show that he exercised actual care, control, or management
over the cocaine. More specifically, appellant contends the proof of his guilt is so
weak as to undermine confidence in the jury's verdict because the State failed to
establish several of the linking factors.

 As we have already stated, the number of existing factors supported by the
evidence is not as important as the "logical force" they collectively create to prove
that a crime has been committed. See Roberson, 80 S.W.3d at 735. Here, police
found two plastic pill bottles, one of which bore appellant's name, containing a total
of 3.2 grams of cocaine in appellant's bedroom. Two officers testified that this
amount of cocaine was consistent with distribution, and one testified that the
packaging was also consistent with distribution. There was no countervailing
evidence. In addition, appellant matched the description of the man given by the
informant who had sold cocaine from that address only days before, and he admitted
to Officer Byrd that he had sold cocaine from that location in the past. Thus, despite
the lack of several possible factors, we cannot say that this evidence is so weak as to
undermine confidence in the jury's verdict.

 Appellant further argues that while no narcotics were found on his person, the
driver of the vehicle, Densen, who had access to his home, was caught throwing
narcotics out of the window of the pickup truck in which they were both seated. 
Appellant was not indicted for possession of these narcotics, however, and the fact
that Densen had some unidentified drugs in his possession in close proximity to
appellant is no evidence that appellant did not possess crack cocaine with the intent
to deliver it. 

 Thus, after neutrally examining all the evidence, we hold that the proof of guilt
was not so weak that the verdict is clearly wrong and manifestly unjust; nor is the
verdict against the great weight and preponderance of the evidence. See Johnson, 23
S.W.3d at 10-11.

 We overrule appellant second and fourth points of error.

Intent to Deliver

 Legal Sufficiency 

 In his fifth point of error, appellant argues that the evidence is legally
insufficient to show that he possessed the cocaine with intent to deliver.

 To prove the offense of possession of a controlled substance with intent to
deliver, the State must prove, in addition to possession, that the accused intended to
"transfer, actually or constructively, to another a controlled substance . . . ." Tex.
Health & Safety Code Ann. §§ 481.002(8), 481.112(a). Intent to deliver a
controlled substance can be proved by circumstantial evidence, including evidence
regarding an accused's possession of the contraband. Mack v. State, 859 S.W.2d 526,
528 (Tex. App.--Houston [1st Dist.] 1993, no pet.). An oral expression of intent is
not required. Robinson, 174 S.W.3d at 331. Additional factors that courts have
considered in determining whether the accused had the intent to deliver include
(1) the nature of the location at which the accused was arrested; (2) the quantity of
contraband in the accused's possession; (3) the manner of packaging; (4) the
presence, or lack thereof, of narcotic paraphernalia for either use or sale; (5) the
accused's possession of large amounts of cash; and (6) the accused's status as a
narcotic user. Williams v. State, 902 S.W.2d 505, 507 (Tex. App.--Houston [1st
Dist.] 1994, pet. ref'd). Expert testimony by experienced law enforcement officers
may also be used to establish an accused's intent to deliver. See Mack, 859 S.W.3d
at 529 (relying, in part, on police officer's testimony "that circumstances logically
indicated appellant's intent to deal, rather than use, the crack cocaine he possessed").

 Police recovered two plastic pill bottles, one of which bore appellant's name,
containing a total of 3.2 grams of cocaine from appellant's bedroom. Both Officer
Byrd and Sergeant Zaled testified that this amount of cocaine is consistent with
distribution rather than personal use. Sergeant Zaled also testified that the manner
in which the cocaine was packaged was consistent with distribution. Appellant
matched the description of the man who had sold cocaine from that address only days
before, and he admitted to Officer Byrd that he had sold cocaine in the past. Viewing all the foregoing evidence in the light most favorable to the verdict,
we conclude that a rational jury could have found beyond a reasonable doubt that
appellant intended to deliver the cocaine. See Wesbrook, 29 S.W.3d at 111; King, 29
S.W.3d at 562; see, e.g., Taylor v. State, 106 S.W.3d 827, 831 (Tex. App.--Dallas
2003, no pet.) (holding evidence sufficient for possession with intent to deliver where
police recovered 1.3 grams of crack cocaine, an amount consistent with
approximately thirteen individual uses, and officer testified that "because of the cost
and nature of the narcotic, it would be 'very uncommon' for someone to purchase
thirteen individual uses of crack cocaine and not have intent to sell at least a portion
of those uses"); Bryant v. State, 997 S.W.2d 673, 675 (Tex. App.--Texarkana 1999,
no pet.) (holding evidence sufficient to prove intent to deliver where police recovered
8.42 grams of cocaine and officer testified that, based on his experience, the cocaine
was intended for sale and distribution); Mack, 859 S.W.2d at 528 (holding that 8.9
grams of crack cocaine in 29 rocks in a known drug-dealing area without
paraphernalia for smoking or otherwise using cocaine was sufficient to show intent
to deliver).

 We overrule appellant's fifth point of error.

 Factual Sufficiency

 In his sixth point of error, appellant argues that the evidence is factually
insufficient to show that he possessed cocaine with the intent to deliver.

 Again, appellant points out the lack of existing factors that courts normally
consider in determining whether the accused intended to deliver contraband. 
Specifically, appellant argues that: (1) he was not attempting to transport narcotics
at the time of arrest, (2) he did not have narcotics or narcotic paraphernalia on his
person at the time of seizure, (3) he did not possess large amounts of cash at the time
of arrest, and (4) he was not under the influence of a controlled substance at the time
of arrest. The record, however, indicates that the amount and packaging of the
cocaine seized were consistent with delivery and that a man matching appellant's
description had sold cocaine from that location only days before, and appellant
admitted that he had sold narcotics from that location in the past. 

 Thus, after neutrally examining all the evidence, we find that the evidence is
not so weak that the verdict is clearly wrong and manifestly unjust nor is the verdict
against the great weight and preponderance of the evidence. See Johnson, 23 S.W.3d
at 10-11.

 We overrule appellant's sixth point of error.

Conclusion

 We affirm the judgment of the trial court.

 


 



 Evelyn V. Keyes

 Justice




Panel consists of Justices Nuchia, Jennings, and Keyes.


Do not publish. Tex. R. App. P. 47.2(b).
1. See Tex. Health & Safety Code Ann. § 481.112 (Vernon Supp. 2003).
2. At trial, Officer Byrd identified the other people in the truck as two adult females, two
children, and the driver.
3. On cross-examination, Officer Byrd acknowledged that "Densen was the one with
drugs in his possession." The record does not specify, however, what kind of drugs
were in the baggie.
4. Officer Byrd testified that he did determine that the room where the cocaine was
found was appellant's bedroom. The record, however, does not reflect how Officer
Byrd determined that the room was appellant's bedroom.
5. The police found a Reliant Energy bill addressed to appellant at that address along
with mail from the Department of Assistive and Rehabilitative Services.
6. Although the necessary connection between the accused and the contraband was once
referred to as an "affirmative link," we now simply refer to it as a "link." See Evans
v. State, 202 S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006).
7. This rule serves to protect the innocent bystander from conviction based solely upon
his fortuitous proximity to someone else's drugs; it restates the common-sense notion
that even if a person jointly possesses property, such as a house or a car, he may not
necessarily jointly possess contraband found in that house or car. Robinson v. State,
174 S.W.3d 320, 325 n.2 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd) (citing
Poindexter v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005)).