**Affirmed and Opinion Filed December 20, 2022**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-21-00664-CR

**EDWIN CORTEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-82900-2020**

## MEMORANDUM OPINION
Before Justices Schenck, Osborne,[1] and Smith
Opinion by Justice Schenck

In one issue, Cortez appeals the district court's order denying his motion to suppress arguing: (1) the evidence is insufficient to support some of the district court's findings of fact; and (2) the district court erred when it concluded (a) the initial stop and detention were reasonable, and (b) there was probable cause to support the officer's warrantless search of his vehicle because it was based the

---

[1] Justice Leslie Osborne was a member of the panel and participated in the oral argument of this appeal. After argument, she resigned from this Court. Justice Osborne did not participate in the decision of this case. TEX. R. APP. P. 41.1(b).

officer's belief that he smelled "illegal marijuana," [2] which has the same odor as "legal hemp." We conclude the district court did not err when it denied Cortez's motion to suppress. The district court's order is affirmed.[3]

## I. BACKGROUND

Cortez was indicted for possession of methamphetamine in an amount of less than one gram enhanced by two prior convictions. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115. Before trial, Cortez filed a motion to suppress the evidence. The district court held a hearing on Cortez's motion to suppress and heard the testimony of one witness, Officer Zach Petty. The following is based on Officer's Petty's testimony.

Around 10:23 a.m., Officer Petty observed a Chevrolet Equinox Sport Utility Vehicle (SUV) weaving from side-to-side, crossing the solid white line, following too closely behind another vehicle, and leaving the turn signal on for a period of time without changing lanes. He ran the license plate number in his computer and received a registration return indicating there was an outstanding warrant attached to the vehicle.

---

[2] The statutory spelling of the substance is "marihuana." *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(26), .120, .121, .122; *Smith v. State*, 176 S.W.3d 907, 911 n.1 (Tex. App.—Dallas 2005, pet. ref'd). The common spelling of the word is "marijuana." *See Smith*, 176 S.W.3d at 911 n.1; *see also* 28 C.J.S. Drugs and Narcotics § 6 (2022). The common spelling is frequently used in trial court records. *Smith*, 176 S.W.3d at 911 n.1.

[3] This appeal involves the same facts and similar legal arguments as *Cortez v. State*, No. 05-21-00661-CR (Tex. App.—Dallas Dec. 20. 2022, no pet. h.) (mem. op.). In that appeal, Cortez challenges the county court's denial of his motion to suppress in the case against him for possession of marijuana. We decide that appeal by a separate opinion also issuing today because it arises out of a different trial court.

–2–

Office Petty pulled the vehicle over in a Costco parking lot and initiated a traffic stop. He described to the driver, Cortez, everything he had observed and asked if everything was ok. Cortez answered that he was low on gasoline. Officer Petty could smell the distinct odor of marijuana coming from the vehicle. Besides Cortez, there were other people in the vehicle. Officer Petty asked for Cortez's identification, which Cortez obtained from a pink purse that appeared to contain Cortez's belongings. Once Officer Petty also obtained the driver's and passengers' information, he returned to his vehicle to request backup and then "ran each subject" on the radio and his computer.

Officer Petty returned and removed Cortez from the vehicle. Then, after his backup arrived, the other passengers were also removed from the vehicle.

Cortez's vehicle was blocking another vehicle from backing out of a parking spot, so Officer Petty requested the keys from Cortez in order to move Cortez's vehicle out of the other driver's way. While in Cortez's vehicle, Officer Petty moved the driver's seat back and heard "a kind of clanking on [the] metal frame" and found drug paraphernalia underneath. When the officers searched the vehicle, they found among other things marijuana, a methamphetamine pipe, and methamphetamine in the pink purse. They also found a methamphetamine pipe in the back seat that was claimed by one of the vehicle's passengers.

The officers arrested Cortez for possession of marijuana. They also determined the outstanding warrant attached to the vehicle's license plate was for

–3–

the front-seat female passenger, and they arrested her. In addition, they arrested the backseat passenger for several outstanding warrants from multiple agencies.

The district court denied Cortez's motion to suppress and signed written findings of fact and conclusions of law. Cortez pleaded guilty to possession of methamphetamine in an amount of less than one gram and true to the two enhancement paragraphs alleged in the indictment. The district court found Cortez guilty, the enhancements true, and assessed his punishment at five years of imprisonment.

## II. DISCUSSION

In his sole issue on appeal, Cortez argues the district court erred when it denied his motion to suppress because: (1) the evidence is insufficient to support its findings of fact; and (2) the district court's conclusions of law are not supported by the findings of fact and are incorrect as a matter of law.

### A. Standard of Review—Motion to Suppress

In reviewing a trial court's ruling on a motion to suppress, an appellate court applies a bifurcated standard of review. *See State v. Hardin*, No. PD-0799-19, 2022 WL 16635303, at *2 (Tex. Crim. App. Nov. 2, 2022). An appellate court gives almost total deference to the trial court's determination of historical facts. *See id.* Likewise, an appellate court affords almost total deference to a trial court's ruling on mixed questions of law and fact, if the resolution to those questions turns on the evaluation of credibility and demeanor. *See id.* And an appellate court conducts a

de novo review of the trial court's application of the law to those facts. *See State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019).

### B. Trial Court's Findings of Fact

In the first part of issue one, Cortez argues the evidence is insufficient to support some of the district court's findings of fact. Specifically, he challenges portions of the district court's findings of fact nos. 1–3 and 6–7, and all of finding of fact no. 9. Cortez maintains that the district court's findings of fact—the officer was qualified to identify marijuana by smell and what he smelled was marijuana—contradict its other findings—the officer is unqualified to distinguish illegal marijuana from legal hemp, the odors of marijuana and hemp are identical, and the odor of marijuana was the officer's only basis for conducting the warrantless search—and are therefore arbitrary and unreasonable.

### 1. Standard of Review—Findings of Fact on Motion to Suppress

The trial court is the sole and exclusive trier of fact and judge of credibility of the witnesses and the evidence presented at a hearing on a motion to suppress. *See Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007). As the sole trier of fact during a suppression hearing, a trial court may believe or disbelieve all or any part of a witness's testimony. *See Wilson v. State*, 311 S.W.3d 452, 458 (Tex. Crim. App. 2010). Where the trial court has made express findings of fact, an appellate court views the evidence in the light most favorable to those findings and determines whether the evidence supports the fact findings. *See State v. Rodriguez*, 521 S.W.3d

1, 8 (Tex. Crim. App. 2017). Unless the trial court abused its discretion by making a finding not supported by the record, an appellate court will defer to the trial court's fact findings and not disturb the findings on appeal. *See Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012); *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).

## 2. Application of the Law to the Facts

Cortez agrees the following findings of fact or portions thereof are supported by the evidence adduced at the motion-to-supress hearing:

1. . . . . The [district] [c]ourt . . . finds [the testifying officer] unqualified to distinguish illegal marijuana from hemp.

2. . . . . The reported behaviors are not apparent on the dashcam footage. . . .

3. Once [Cortez's] vehicle was stopped, the subsequent search of the vehicle was based entirely upon the officer's smell of marijuana. . . . The officer's probable cause to search the vehicle and initially detain [Cortez] and the passenger was based entirely on the smell. . . .

4. The search was warrantless.

5. The officer also testified that he observed furtive behaviors by the driver/[Cortez]. However, he did not rely on these observations in conducting the warrantless search and, in any event, no furtive behavior is observed by the [district] [c]ourt in the dashcam or bodycam videos. The [district] [c]ourt observes that it is almost impossible to see inside the SUV from even a short distance behind the SUV. For purposes of this Motion to Suppress, therefore, the [trial] [c]ourt finds there is no credible evidence of furtive behavior at any relevant time.

6. All other observations by the officer occurred after the stop and the search initiated by the smell of marijuana had begun. These additional observations and findings, although credible, are therefore irrelevant since the officer's only stated basis for probable cause to

conduct the search was the smell of marijuana emanating from the car. . . .

7.    . . . . As stated in the footnote, though, the [district] [c]ourt for the purposes of this proceeding assumes that the odors of illegal marijuana and legal hemp are identical.  [The footnote states: "for purpose[s] of this motion to suppress, however, the [district] [c]ourt acknowledges that they are the same as expressed routinely in other cases which have decided the issue before the [district] [c]ourt and as same is expressed in the scientific literature as the common public knowledge.]

8.    The traffic stop occurred on October 27, 2019, which was after the Texas Hemp Farming Act became effective and after legal hemp had been excluded from the definition of illegal marijuana.  At the time of the traffic stop and search, certain forms of hemp were "legal."  However, the procedure established for growing, transporting, and selling such "legal" products had not yet been established.

However, Cortez argues the following findings of fact or portions thereof are

not supported by sufficient evidence:

1.    The testifying officer has over five years of experience as a patrol officer and is intimately familiar with the traffic laws.  He is also trained and certified in narcotics highway interdiction, including training in observing driving behaviors and identification of narcotics, including marijuana.  The [district] [c]ourt finds him qualified to identify marijuana by smell and appearance in the ordinary course of events. . .

2.    The officer stopped the vehicle [Cortez] was driving, a Chevrolet Equinox SUV, after observing it for some distance.  The officer described the SUV as (a) weaving from side to side, (b) crossing a solid white line, (c) following other cars too closely, and (d) leaving his turn signal on for a while without making a lane change[.]. These observations predominantly occurred before the dashcam recording began (the observations began at approximately the 2500 block of the highway and the dashcam recording began at about the 3000 block marker). . . . Tthe reported behaviors are not apparent on the dashcam footage and [Cortez] urges that this should take precedence over the officer's testimony.  However, the [district] [c]ourt finds the officer's testimony regarding the vehicle's behavior prior to the beginning of the

–7–

recording to be credible and therefore finds that the original traffic stop based upon these observations to have been based upon reasonable suspicion that [Cortez] had violated at least one traffic law (following too closely and crossing the white line). . . .

3. The subsequent events were based upon the contraband located during the search. The [district] [c]ourt finds that the officer had sufficient training and experience to recognize the smell of marijuana and did so in this case. . . . The officer was clear in his testimony and the bodycam video footage substantiates that the only reason for the officer's search of the vehicle and, ultimately, the driver and his two passengers, was the smell of marijuana.

. . . .

6. . . . . If the search was based on probable cause, the subsequent actions based upon contraband discovered during the search were proper.

7. During cross-examination, the officer admitted that he had not been trained in distinguishing "legal" from "illegal" hemp/marijuana by smell or otherwise. He never admitted that the smell of "legal" hemp and "illegal" marijuana were the same and there is no evidence in the record that they are the same.

. . . .

9. The vehicle was readily mobile.

The crux of Cortez's argument is that the district court's findings of fact are self-contradicting and therefore, arbitrary and unreasonable. His argument essentially divides a single sentence in finding of fact no. 1 into two propositions. That sentence states, "The [district] [c]ourt finds [the officer] qualified to identify marijuana by smell and appearance in the ordinary course of events, but finds him unqualified to distinguish illegal marijuana from legal hemp." When read in the light most favorable to the district court's finding, it is clear that the first part of the

sentence is referring to "marijuana" in a general sense, i.e., the plant Cannabis sativa L. from which both marijuana and hemp are derived, because it does not reference its legality and expressly states that portion of the finding is in the context of the "ordinary course of events." This understanding is supported by the second half of the sentence which is more specific and clearly distinguishes between "illegal marijuana" and "legal hemp." While it would have been preferrable for the district court to use more precise language in its findings of fact given the change in legal status for hemp, it is clear from the record that when generally referring to "marijuana… in the ordinary course of events," the district court was referring to the plant Cannabis sativa L., not marijuana or hemp as statutorily defined. Accordingly, we conclude the district court's findings of fact are not arbitrary or unreasonable and do not contradict themselves.

Cortez also extracts a portion of a sentence in finding of fact no. 3, which states in full, "The [district] court finds that the officer had sufficient training and experience to recognize the smell of marijuana and did so in this case." Again, when read in light most favorable to the district court's finding, it is clear that the district court was referring to "marijuana" in a general sense, i.e., Cannabis sativa L., because he does not reference the substance's legal status.

The trial court's findings of fact largely comport with the officer's testimony. The district court was the exclusive trier of fact and judge of the credibility of the

witnesses.  *See Delao*, 235 S.W.3d at 235.  After reviewing the record, we conclude the evidence supports the challenged findings of fact.

We decide against Cortez on the first part of his sole issue.

### C.  Trial Court's Conclusions of Law

In the second part of issue one, Cortez argues the district court erred when it concluded (a) the initial stop and detention were reasonable, and (b) there was probable cause to support the officer's warrantless search of his vehicle because it was based the officer's belief that he smelled illegal marijuana, which has the same odor as legal hemp.[4]

### 1.  Standard of Review—Conclusions of Law on Motion to Suppress

An appellate court reviews the trial court's legal ruling on a motion to suppress de novo, unless its specific fact findings that are supported by the record are also dispositive of the legal ruling.  *See Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013).  An appellate court must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling.  *See State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).  A trial court will abuse its discretion only if it refuses to suppress evidence that is obtained in violation of the law and that is

---

[4] Cortez also argues the district court erred when it concluded that he consented to the search of his vehicle because it was not feely and voluntarily given.  We need not address this argument because the district court did not conclude that he consented to the search and it is not necessary for the disposition of this appeal.

–10–

inadmissible under Texas Code of Criminal Procedure article 38.23. *See Wilson*, 311 S.W.3d at 458.

## 2. Initial Stop and Detention

Cortez argues that the trial court erred when it concluded the initial traffic stop was supported by the officer's reasonable suspicion that one or more traffic laws had been violated. He contends that the officer prolonged the underlying traffic stop, which should have ended once the officer determined there was no medical emergency or after the officer issued a traffic citation. The State responds that the record shows the officer's reasonable suspicion to stop the vehicle was based on an outstanding warrant associated with the vehicle's license plate, which is sufficient to establish reasonable suspicion to stop Cortez's vehicle.

### a. Applicable Law

A warrantless traffic stop is a Fourth Amendment seizure that is analogous to temporary detention; thus, it must be justified by reasonable suspicion. *Hardin*, 2022 WL 16635303, at *3. An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person being detained actually is, has been, or soon will be engaged in criminal activity. *Hardin*, 2022 WL 16635303, at *3. This is an objective standard that disregards any

–11–

subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Brodnex v. State*, 485 S.W.3d 432, 437 (Tex. Crim. App. 2016). A reasonable-suspicion determination is made by considering the totality of the circumstances. *Hardin*, 2022 WL 16635303, at *3.

Generally, an officer may use information obtained from checking a vehicle's license plate in a computer database to form reasonable suspicion. *Delk v. State*, 855 S.W.2d 700, 709–10, 712 (Tex. Crim. App. 1993) (concluding officers had reasonable suspicion to question defendant after officer "ran a license check on a vehicle" in law enforcement database, and computer indicated car had been stolen and owner was homicide victim); *see also Blankenship v. State*, No. 05-19-01436-CR, 2022 WL 336560, at *3 (Tex. App.—Dallas Feb. 4, 2022, no pet.) (mem. op., not designated for publication). An officer's belief that the owner of a vehicle has an outstanding arrest warrant may constitute reasonable suspicion justifying an investigative stop of the vehicle. *See Hurtado v. State*, 881 S.W.2d 738, 742 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

### b. Application of the Law to the Facts

The district court expressly concluded with respect to Cortez's initial detention:

> 1.  The initial traffic stop was supported by the officer's reasonable suspicion that one or more traffic laws had been violated.

However, we need not address whether the district court erred when it made this conclusion of law because the record shows that, before stopping the vehicle, the

–12–

officer ran the license plate and discovered the vehicle was attached to an outstanding warrant, which may constitute reasonable suspicion justifying an investigative stop of a vehicle. *See Delk*, 855 S.W.2d at 709–10, 712. And, during the stop, the officer confirmed that the front-seat female passenger matched the warrant, and she was arrested. To the extent Cortez argues the officer should have ended the stop when he determined there was no "medical emergency," the record shows the officer was in the process of investigating the outstanding warrant when he smelled the odor of marijuana. We must uphold the district court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *See Stevens*, 235 S.W.3d at 740.

We conclude the district court did not err when it concluded the initial traffic stop was supported by the officer's reasonable suspicion.

### 3. Probable Cause to Search

Cortez argues that the trial court erred when it concluded there was probable cause to support the officer's warrantless search of his vehicle based the officer's belief that he smelled "illegal marijuana," which has the same odor as "legal hemp." According to Cortez, recent legislative changes made a distinction between two categories of the plant Cannabis sativa L. based on the amount of THC contained in the plant—decriminalizing hemp which is defined as the plant Cannabis sativa L. with a delta-9 tetrahydrocannabinol concentration (THC) of not more than 0.3

–13–

percent on a dry weight basis and providing that an individual is only criminally responsible for possessing marijuana which has a THC level higher than hemp. *Compare* TEX. AGRIC. CODE ANN. § 121.001 *with* HEALTH & SAFETY § 481.002(26). As a result, the odor of Cannabis sativa L. is insufficient to establish probable cause to conduct a warrantless search. The State responds that courts have long held that the smell of marijuana alone is sufficient to constitute probable cause to search a defendant's person, vehicle, and the objects within the vehicle. And in Texas, marijuana remains illegal.

### a.  Applicable Law

The federal Agricultural Improvement Act of 2018 (2018 Farm Bill) classified "hemp" as an agricultural product and generally authorized each state to decide whether and how to regulate it within the state's borders. *Texas Dep't of State Health Servs. v. Crown Distributing LLC*, 647 S.W.3d 648, 650 (Tex. 2022). The 2018 Farm Bill excludes "hemp" and hemp products that are cultivated, produced, manufactured, and sold in compliance with federal regulations and the relevant state's federally approved plan. *Id.*

The Texas Legislature adopted a hemp plan in 2019. *Id.* As a result, the Texas Agricultural Code generally permits and regulates the cultivation and handling of hemp within this state; it generally permits Texans to cultivate, handle, transport, export, process, manufacture, distribute, sell, and purchase hemp and hemp-containing products within Texas. AGRIC. §§ 121.001–122.404; *Crown*

*Distributing*, 647 S.W.3d at 650. But the plan expressly prohibits the "processing" or manufacturing" of hemp-containing products "for smoking." AGRIC. § 122.301(b); *Crown Distributing*, 647 S.W.3d at 650–51. As a result, the Texas Administrative Code prohibits the "manufacture," "processing," and distribution or retail sale of "consumable hemp products for smoking." 25 TEX. ADMIN. CODE § 300.104; *Crown Distributing*, 647 S.W.3d at 651. Also, the Texas Legislature amended the Texas Health and Safety Code to remove hemp from the definition of marijuana. HEALTH & SAFETY § 481.002; *Smith v. State*, 620 S.W.3d 445, 448–49 (Tex. App.—Dallas 2020, no pet.).

Under § 481.212 of the Texas Health and Safety Code, a person commits an offense if the person knowingly or intentionally possesses a usable quantity of marijuana. HEALTH & SAFETY § 481.121(a). Possession of marijuana for personal use in Texas generally is a misdemeanor. *See id.* § 481.121(b)(1).

A warrantless search is considered per se unreasonable subject only to a few specifically established and well-delineated exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). A strong odor of marijuana from a small enclosed area, like a car, gives a peace officer probable cause to make a warrantless search of both the car and its occupants. *Stringer v. State*, 605 S.W.3d 693, 697 (Tex. App.—Houston [1st Dist.] 2020, no pet.). As marijuana possession is a crime, its odor may evidence criminal activity. *Id.*

As detailed below, Cortez urges that a search based on the odor of marijuana must be unreasonable unless the officer is able to discern as a matter of fact and law that the substance in question is, in fact, not simply hemp. The "touchstone" of the fourth amendment, of course, is "reasonableness." *Heien v. North Carolina,* 574 U.S. 54, 60 (2014). "To be reasonable," however, "is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Id.* at 60–61. An error of fact or law, if reasonable, will not render the officer's judgment on the scene as invariably unreasonable. *Id.* at 61–68. Thus, if an officer, while conducting an otherwise permissible inventory search of a vehicle comes across bales of white powder wrapped tightly in plastic and duct tape, determines on the scene that seizure and arrest appear appropriate, the decision is not retroactively rendered "unreasonable" because later laboratory testing reveals the substance to be something other than cocaine. Were it otherwise, our drug laws would become practically unenforceable.

**b. Application of the Law to the Facts**

The district court made the following conclusions of law with respect to the warrantless search of Cortez's vehicle:

> 2. The search of [Cortez's] SUV initiated by the officer based solely on the smell of an odor associated with illegal marijuana was supported by probable cause in the totality of the circumstances and was therefore valid;

–16–

3.    The contraband evidence obtained from the subsequent search of [Cortez's] vehicle was obtained legally[.]

In this case, the officer was not mistaken in his belief that Cortez was in possession of marijuana.  Rather, Cortez argues that because marijuana and hemp come from the same plant, Cannabis sativa L., the difference between the two are impossible to distinguish by smell and therefore, the possibility of error was invariably present and, thus, the odor of Cannabis sativa L. is insufficient by itself to establish probable cause to search.  But the possession of marijuana is still a criminal offense under Texas law and a reasonable, even if ultimately erroneous conclusion by an officer on the scene as to the identity of the substance, would be permitted under the Fourth Amendment.  *See* HEALTH & SAFETY § 481.121(a).[5] Therefore, we conclude the odor of Cannabis sativa L. emanating from Cortez's vehicle gave the officer probable cause to search the vehicle as well as its occupants. *See Stringer*, 605 S.W.3d at 697.

We conclude the trial court did not err when it concluded there was probable cause to support the officer's warrantless search of Cortez's vehicle based the officer's belief that he smelled Cannabis sativa L.

We decide against Cortez on the second part of his sole issue.

---

[5] Further, although hemp is legal, the "manufacture," "processing," and distribution or retail sale of "consumable hemp products for smoking" is prohibited.  *See* AGRIC. § 122.301(b); 25 ADMIN. § 300.104; *Crown Distributing*, 647 S.W.3d at 651.

–17–

## III. CONCLUSION

Having concluded the district court did not err when it denied Cortez's motion to suppress, we affirm the district court's order.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

Do Not Publish
Tex. R. App. P. 47

210664F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

EDWIN CORTEZ, Appellant

No. 05-21-00664-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District Court, Collin County, Texas
Trial Court Cause No. 401-82900-2020.
Opinion delivered by Justice Schenck. Justice Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered December 20, 2022